The opinion of the court was delivered by
Luckert, J.:
Joshua Quested appeals, contending the sentencing judge imposed an illegal sentence by ordering the sentences in this Saline County case be served consecutive to a previously imposed Dickinson County sentence. He argues no Kansas statute explicitly authorizes consecutive sentences for convictions arising in separate cases prosecuted in different counties. Although the State does not dispute this assertion, it urges us to follow the 20-year-old holding in State v. Chronister, 21 Kan. App. 2d 589, 903 P.2d 1345 (1995), which recognized the power of a sentencing judge to order that a sentence be served consecutive to a sentence previously imposed in a different county. We agree with this precedent, and we hold that Quested’s sentences conformed to Kansas law and are not illegal. We, therefore, affirm his sentences.
*263 Facts and Procedural Background
Pursuant to a plea agreement, Quested pleaded guilty in the Saline County District Court to nonresidential burglaiy and possession of stolen property in case number 07 CR 249. He also pleaded guilty to possession of marijuana and possession of stolen property in case number 07 CR 47. Under the terms of the plea agreement, Quested agreed that his sentences in Saline County would run consecutive to a yet-to-be-imposed sentence for another recent conviction in Dickinson County case number 07 CR 15. The Dickinson County crimes were factually related to the crimes in one of the Saline County cases.
After being convicted in the three cases, Quested first received his sentence in the Dickinson County District Court. The next day, Quested proceeded to sentencing for his Saline County convictions. The State, consistent with the plea agreement, requested that Quested’s Saline County sentences run consecutive to the Dickinson County sentence imposed the previous day. The Saline County sentencing judge adopted this recommendation when imposing sentence. The judge suspended execution of the sentence, however, and granted Quested a dispositional departure to probation.
Nearly 1 year later, the judge revoked Quested’s probation after Quested attempted to escape from Labette Correctional Conservation Camp. The judge ordered Quested to serve his underlying prison sentence. Quested then filed a motion to correct an illegal sentence, claiming that the sentencing judge had no statutory authority to malee his Saline County sentences run consecutive to his Dickinson County sentence. After a hearing, the Saline County sentencing judge denied Quested’s motion. Quested timely appealed to the Court of Appeals, which affirmed. We granted Quested’s petition for review. See State v. Quested, No. 106,805, 2012 WL 3000385, at *1-2 (Kan. App. 2012) (unpublished opinion), rev. granted 298 Kan. 1207 (2013).
*264 Analysis
Issue: Did the sentencing judge have the authority to order Quested’s Saline County sentences he served consecutive to Quested’s previously imposed Dickinson County sentenceP
1.1. Preservation
Initially, the State contends that we lack jurisdiction to review Quested’s Saline County sentences because the judge imposed sentences Quested bargained for in his plea agreement. Under K.S.A. 2014 Supp. 21-6820(c)(2), an “appellate court shall not review . . . any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record.”
While K.S.A. 2014 Supp. 21-6820(c)(2) would appear to support the State’s position, another statute—K.S.A. 22-3504(1)—provides that a “court may correct an illegal sentence at any time.” This court has reconciled the two statutes by holding that an appellate court has jurisdiction to correct an illegal sentence even if it was agreed to in a plea. See State v. Cullen, 275 Kan. 56, 60-61, 60 P.3d 933 (2003); cf. State v. Morningstar, 299 Kan. 1236, Syl. ¶ 1, 329 P.3d 1093 (2014) (appellate courts have jurisdiction to determine the authority to impose a consecutive sentence even when a defendant receives a presumptive sentence, which is generally not appealable). Quested invoked K.S.A. 22-3504(1) and its authorization to raise a legality challenge at any time by filing a motion to correct an illegal sentence and arguing his Saline County sentences do not conform to Kansas law. See State v. Sims, 294 Kan. 821, 825, 280 P.3d 780 (2012) (defining an “illegal sentence” to include one that fails to conform to law).
Hence, Quested’s plea agreement does not waive his right to attack his sentence on the basis it was not authorized by statute.
1.2. Kansas’ sentencing statutes and consecutive sentences
Quested’s motion for illegal sentence and his appellate arguments focus on the lack of statutory authority empowering the Saline County sentencing judge to impose sentences consecutive to the Dickinson County sentence. He argues there is no statute addressing consecutive sentences under tire circumstances of his case; i.e., when a sentence is imposed on different dates, in courts *265 of different Kansas counties, for separate crimes arising from different charging documents. He notes that Kansas statutes address the issue of consecutive sentences in some circumstances, just not his. The State does not argue that any statute authorizes the sentencing judge’s order. Instead, it relies on Chronister, 21 Kan. App. 2d 589, which served as the basis for the Court of Appeals’ decision. Quested, 2012 WL 3000385, at *1-2.
As Quested suggests, K.S.A. 2006 Supp. 21-4720—a provision of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 et seq., which became effective in 1993—discusses consecutive sentencing but does not cover the circumstances of his case. K.S.A. 2006 Supp. 21-4720 states:
“(a) The provisions of subsections (a), (b), (c), (d), (e) and (h) of K.S.A. 21-4608 and amendments thereto regarding multiple sentences shall apply to the sentencing of offenders for crimes committed on or after July 1, 1993, pursuant to the sentencing guidelines system as provided in this act. The mandatory consecutive requirements contained in subsections (c), (d) and (e) shall not apply if such application would result in a manifest injustice.
“(b) The sentencingjudge shall otherwise have discretion to impose concurrent or consecutive sentences in multiple conviction cases. The sentencingjudge shall state on the record if the sentence is to be served concurrently or consecutively.” (Emphasis added.) K.S.A. 2006 Supp. 21-4720(b).
At first glance, the plain language of K.S.A. 2006 Supp. 21-4720(b) appears to be a broad grant of discretion to impose consecutive sentences. But in lieu of a statutory definition for the phrase “multiple conviction cases,” this court—in a context different from that presented today—has held the term in K.S.A. 2006 Supp. 21-4720(b) is solely a reference “to sentencing on multiple convictions from one charging document.” State v. Koehn, 266 Kan. 10, 17, 966 P.2d 63 (1998); State v. Roderick, 259 Kan. 107, 113-14, 911 P.2d 159 (1996). Moreover, that “definition applies for all provisions of K.S.A. 21-4720(b).” State v. Bolin, 266 Kan. 18, Syl. ¶ 2, 968 P.2d 1104 (1998). Because Quested’s multiple convictions did not arise from a single charging document, the judicial construction of the term “multiple conviction cases” means that K.S.A. 2006 Supp. 21-4720(b) did not provide the Saline County sentencing judge with the authority to order Quested to serve his *266 Saline County sentences consecutive to his Dickinson County sentence.
The other subpart of this statute—K.S.A. 2006 Supp. 21-4720(a)—refers back to several subsections of K.S.A. 21-4608, which was part of the 1969 codification of the criminal law. L. 1969, ch. 180, sec. 21-4608. Under K.S.A. 21-4608(a), a sentencing judge has discretion to impose consecutive sentences when sentencing a defendant on the same day for different crimes. This provision applied to Quested’s two Saline County convictions but not to his Dickinson County sentence. Subsection (b) grants discretion for a consecutive sentence when a defendant commits a crime while on various forms of release for a prior misdemeanor conviction. Additionally, subsections (c), (d), and (e) mandate a consecutive sentence when a defendant commits a crime while either incarcerated or on some form of release for a prior felony conviction. See also K.S.A. 2006 Supp. 21-4603d(f). But Quested did not commit a subsequent crime while incarcerated or on release; he committed additional crimes prior to being arrested for the first crimes. Thus, he is correct that subsections (b), (c), (d), and (e) do not apply to his case.
In addition, the State and Quested both accept that K.S.A. 21-4608(h) does not apply to his situation. This provision states:
“When a defendant is sentenced in a state court and is also under sentence from a federal court or other state court or is subject to sentence in a federal court or other state court for an offense committed prior to the defendant’s sentence in a Kansas state court, the court may direct. . . that such state sentences as are imposed may run concurrently with any federal or other state sentence imposed.” (Emphasis added.) K.S.A. 21-4608(h).
The Court of Appeals panel deciding Chronister interpreted this provision to apply only if tire prior sentence had been imposed in the court of another state or a federal court. Chronister, 21 Kan. App. 2d at 593. Under this interpretation of K.S.A. 21-4608(h), no statutory provision would expressly apply in Quested’s situation. The panel in this case did not analyze the statutes; instead it merely cited Chronister. Quested, 2012 WL 3000385, at *1-2.
We are not totally convinced the Chronister panel’s reading of K.S.A. 21-4608(h) is correct. The first few words of K.S.A. 21- *267 4608(h)—“[wjhen a defendant is sentenced in a state court”—apparently refers to the court imposing the new sentence, which obviously would be a court in Kansas. This suggests the subsequent references to a “state court” that imposed a prior sentence also include state courts in Kansas—whether in a different county or even the county of die current conviction. Quested’s situation is arguably contemplated by the statute: He was sentenced in Saline County (in a state court) while also under sentence or subject to sentence in Dickinson County (other state court) for an offense committed prior to his sentence in Saline County (a Kansas state court). At a minimum, the statute does not expressly require that the “other state court” sentence be issued by the court of another state.
Nevertheless, the statute does not specifically authorize the imposition of a consecutive sentence. Instead, it states that “such state sentences as are imposed may run concurrently with any federal or other state sentence.” K.S.A. 21-4608(h). Although there is no reference to a consecutive sentence, the provision implies that the standard order would be to run the sentences consecutively. The statute arguably clarifies that need not always be the case; the provision allows the court to use discretion in determining whether to impose consecutive or concurrent sentences. See Chronister, 21 Kan. App. 2d at 593.
We hesitate to resolve the ambiguities of this provision, for there are many, in an appeal where its meaning has not been argued by the parties, especially since we agree with the remainder of the Chronister opinion. Moreover, even if we were to sort through the ambiguities of K.S.A. 21-4608(h), we would walk the same path as did the Chronister court in trying to determine the legislature’s intent. See State v. Phillips, 299 Kan. 479, 495, 325 P.3d 1095 (2014) (court’s first task in construing the statutory language is to ascertain legislative intent through an analysis of the language employed, giving ordinary words their ordinary meaning).
We, therefore, will analyze Quested’s case based on his premise—which is true even if K.S.A. 21-4608(h) applies—that no Kansas statute expressly authorizes a sentencing judge from ordering a sentence to run consecutive to a sentence previously imposed in *268 a different county. But we point out that it is equally true that no Kansas statute expressly prohibits a sentencing judge from ordering a sentence to run consecutive to a sentence previously imposed in a different county. Quite simply, no statute expressly addresses this situation.
This legislative silence creates an ambiguity. When faced with an ambiguity, courts must attempt to ascertain legislative intent and in doing so may look to canons of construction, legislative history, the circumstances attending the statute’s passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. See In re Marriage of Traster, 301 Kan. 88, 98, 339 P.3d 778 (2014); Phillips, 299 Kan. at 495. The Chronister panel employed some of these considerations in reaching its holding.
1.3. Chronister
In Chronister, as here, a defendant received sentences on different dates for crimes occurring in different counties. The second sentencing judge ordered Chronister to serve that sentence after he completed the earlier sentence. Chronister, 21 Kan. App. 2d at 590-91. On appeal, Chronister argued the sentencing judge lacked authority to order the sentences be served consecutively, noting that no statute explicitly authorized consecutive sentences under circumstances like his.
The Chronister Court of Appeals panel concluded that no statute covered the situation and discounted the applicability of K.S.A. 21-4608(h) by limiting it to apply when a defendant is under sentence or subject to sentence in “other jurisdictions.” 21 Kan. App. 2d at 593. Nevertheless, the Chronister panel held the sentencing judge had discretion to order Chronister to serve his sentence consecutively to the sentence previously imposed in a different county. The panel did so by noting that die statutes allowed for consecutive sentencing if the earlier sentence had been imposed in either “another state” or in federal court and properly determining that it would be “illogical” to conclude the legislature intended a sentencing benefit to defendants who committed more tiran one offense in Kansas. 21 Kan. App. 2d at 593.
*269 In addition, the Chronister court noted that “[p]rior to 1982, the imposition of concurrent or consecutive sentences in all criminal cases was placed within the sound discretion of the trial court” even though no statutory provisions mandated consecutive sentences. 21 Kan. App. 2d at 593 (citing State v. Reed, 237 Kan. 685, 703 P.2d 756 [1985]). Then, in 1982, the legislature limited judicial discretion by mandating consecutive sentences in certain cases “in response to public concern.” 21 Kan. App. 2d at 593. “Given the impetus behind the 1982 amendment, it is doubtful that the legislature also intended to strip courts of the power to impose consecutive sentences in cases such as the present one” where crimes were committed in two different Kansas counties. 21 Kan. App. 2d at 593-94.
Although this court has not previously addressed the issue in Chronister since the KSGA became effective in 1993, the State urges us to recognize that the Chronister holding has guided sentencing in Kansas for 20 years, including in this case, and to adopt its reasoning. While the Chronister panel read K.S.A. 21-4608(h) differently than we do, the panel’s reasoning supports our interpretation of the legislature’s intent. In addition, we agree that the doctrine of stare decisis justifies our adoption of Chronister.
1.4. Following precedent
Indeed, following precedent—especially such long-standing precedent—-promotes system-wide stability and continuity. Crist v. Hunan Palace, Inc., 277 Kan. 706, 715, 89 P.3d 573 (2004). We recognize that we are not bound by the Court of Appeals’ decision, but it has guided sentencing judges for 20 years. And no other decision has clearly instructed sentencing judges to do anything but follow Chronister—the only appellate decision specifically addressing die circumstances of this case. See Crist, 277 Kan. at 715 (“ ‘It is recognized under the doctrine of stare decisis that, once a point of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in subsequent cases where the same legal issue is raised.’ ”).
Nevertheless, Quested argues we should not adopt Chronister because it was wrongly decided. Certainly, even if we were bound *270 by a Court of Appeals decision, which we are not, “[t]he doctrine of stare decisis [would] not compel us to perpetuate an incorrect analysis of a statute enacted by the legislature.” Hall v. Dillon Companies, Inc., 286 Kan. 777, 787, 189 P.3d 508 (2008). But, as Quested himself takes pains to point out, this is not a situation where the Chronister court ignored or modified the plain language in a statute. Rather, tire Chronister court seemingly held that in lieu of a direct statement by the legislature abrogating a judge’s common-law authority to impose a consecutive sentence, the judge retained the authority to decide whether a sentence should be concurrent or consecutive, especially since recognizing that authority furthered the legislative policy. Chronister, 21 Kan. App. 2d at 593-94. Although the discussion of this point in Chronister is implicit and brief, other cases provide context and support for the proposition that a judge’s common-law authority to impose consecutive sentences is not abrogated unless the legislature enacts a statute that does so or otherwise expresses a contrary intent.
1.5. United States Supreme Court decisions
Decisions of the United States Supreme Court illustrate the point. The Court documented the history of a judge’s common-law power to impose consecutive sentences in Oregon v. Ice, 555 U.S. 160, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009). The Ice Court cited two general authorities supporting the longstanding recognition of a judge’s power to exercise discretion and to order a sentence to run either concurrent with or consecutive to another sentence. 555 U.S. at 168-69 (quoting 1 J. Bishop, Criminal Law § 636, pp. 649-650 [2d ed. 1858] [ “ ‘(W)hen there are two or more convictions, on which sentence remains to be pronounced; the judgment may direct, that each succeeding period of imprisonment shall commence on the termination of the period next preceding.’ ”]; A. Campbell, Law of Sentencing § 9:22, p. 425 [3d ed. 2004] [“ ‘Firmly rooted in common law is the principle that the selection of either concurrent or consecutive sentences rests within the discretion of sentencing judges.’ ”]).
The Ice Court also cited several English cases to show that a judge’s authority to impose a consecutive sentence had been rec *271 ognized before the “founding of our Nation” and to establish that the “historical record further indicates that a judge’s imposition of consecutive, rather than concurrent, sentences was the prevailing practice.” 555 U.S. at 169 (quoting Lee v. Walker, [1985] 1 Q.B. 1191, 1201 [1984] [“ ‘(T)he High Court has always had inherent jurisdiction to impose consecutive sentences of imprisonment in any appropriate case where the court had power to imprison.’ ”]; Queen v. Cutbush, 2 L.R.Q.B. 379, 382, 10 Cox Crim. Cas. 489, 492 [1867] [“ ‘(R)ight and justice require (that) when a man has been guilty of separate offences,... that he should not escape from the punishment due to the additional offence, merely because he is already sentenced to be imprisoned for another offence”; also noting that it had been the practice to impose consecutive sentences “ ‘so far as living judicial memory goes back’ ”]; and citing King v. Wilkes, 19 How. St. Tr. 1075, 1132-1136 [K.B. 1769]).
The Ice Court did note, however, that a legislature is free to “rein in the discretion judges possessed at common law to impose consecutive sentences at will.” 555 U.S. at 171. The effect of such an attempt to rein discretion was tested 3 years later in Setser v. United States, 566 U.S. _, 132 S. Ct. 1463, 182 L. Ed. 2d 455 (2012).
In Setser, the United States Supreme Court considered whether a statute passed by Congress limited the authority to such an extent that it was totally abrogated under the circumstances underlying the case. The federal sentencing statutes in question—much like Kansas’—addressed some, but not all, multiple sentencing situations. In light of those federal statutes, the question in Setser was whether a federal judge had the authority to order a defendant to serve his federal sentence consecutive to a yet-to-be-imposed state sentence. Federal statutes regarding consecutive or concurrent sentences addressed only multiple sentences imposed at the same time or a sentence imposed on a defendant who was already subject to an undischarged term of imprisonment. Neither circumstance applied, but the Court held the federal sentencing judge had the discretion to impose a consecutive sentence.
The Setser Court reasoned that the federal sentencing statutes had to be construed in light of “ ‘the common-law background *272 against which the statutes . . . were enacted.’ ” 132 S. Ct. at 1468. Under that approach, the Court recognized: “Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings.” 132 S. Ct. at 1468. The Court observed there must be a mechanism to determine whether two or more sentences are concurrent or consecutive, and Congress had done nothing to foreclose the exercise of judges’ commonly recognized authority to make the determination. 132 S. Ct. at 1468.
The Court also rejected the defendant’s argument that Congress’ grant of authority to impose consecutive sentences in “scenario A and scenario B [means] there is no such discretion in scenario C.” 132 S. Ct. at 1469. The points made by the Court in rejecting this argument apply equally to Kansas’ statutory scheme:
“The Latin maxim on which Setser relies—expressio unius est exclusio alter-ius—might have application here if the provision in question were a conferral of authority on district courts. Giving sentencing authority in only specified circumstances could be said to imply that it is withheld in other circumstances. Section 3584, however, is framed not as a conferral of authority but as a limitation of authority that already exists (and a specification of what will be assumed when the exercise of that authority is ambiguous). It reads not ‘District courts shall have authority to impose multiple terms of imprisonment on a defendant at the same time, etc.’ but rather ‘If multiple terms of imprisonment are imposed on a defendant at the same time, [etc.]’—quite clearly assuming that such authority already exists. The mere acknowledgment of the existence of certain pre-existing authority (and regulation of that authority) in no way implies a repeal of other pre-existing authority. And that is especially true when there is an obvious reason for selecting die instances of pre-existing authority that are addressed—to wit, that they are the examples of sentencing discretion most frequently encountered.” 132 S. Ct. at 1469.
The United States Supreme Court is not alone in reaching the conclusion that the common-law authority to impose a consecutive sentence continues in situations where there is not a legislative directive otherwise. Several state courts have reached the same conclusion. E.g., State v. Leak, 297 Conn. 524, 537-39, 998 A.2d 1182 (2010) (courts have “inherent common-law power to stay the execution of their own judgments and thereby order that confine *273 ments run consecutively”; power continues in lieu of clear legislative mandate to alter the common law even in the absence of an express statutory conferral of authority); Schamber v. State, 152 Ga. App. 196, 198, 262 S.E.2d 533 (1979) (finding sentencing statute not applicable and not “a limitation upon the discretion of the trial court, derived from tire common law, to set sentences ... to commence at the termination of all sentences previously imposed”); State v. Calley, 140 Idaho 663, 665, 99 P.3d 616 (2004) (holding that while no sentencing statute permitted a court in one county to impose a sentence consecutive to probation from another county, “[u]nder the common law, the courts in Idaho have discretionary power to impose cumulative sentences”); Duquette v. Warden, New Hampshire State Prison, 154 N.H. 737, 743-44, 919 A.2d 767 (2007) (statutory silence regarding authority to impose consecutive sentence did not limit common-law authority; inherent discretionary authority was only limited by certain situations where consecutive sentences were mandated); State v. Trice, 159 Or. App. 1, 4-5, 976 P.2d 569 (1999) (“nothing in the language of the statute . . . limits the court in the exercise of its discretion from imposing partially consecutive sentences and concurrent sentences”).
1.6. Kansas decisions predating Chronister
These cases—both of the United States Supreme Court and of other state courts—are not binding on'us. They are merely persuasive support for the holding in Chronister. Although not addressing these cases, Quested argues that any reliance on common-law authority, as articulated in State v. Chronister, 21 Kan. App. 2d 589, 903 P.2d 1345 (1995), is contraiy to the reasoning in another Court of Appeals decision, State v. Crawford, 39 Kan. App. 2d 897, Syl. ¶¶ 2-3, 185 P.3d 315 (2008). He argues that under Crawford, a judge lacks the authority to impose consecutive sentences unless specifically authorized by statute.
To better understand the Chronister panel’s decision and the cases relied upon by the Crawford panel, some historical context is helpful. Cases predating Chronister generally support the Chronister panel’s reasoning and, more specifically, the conclusion that a sentencing judge retains the common-law power to impose *274 consecutive sentences in any circumstance where the Kansas Legislature has not restricted the authority or stated a contrary legislative policy. In other words, as stated in one such decision, the common-law rule “should be applied, in the absence of a statute governing the subject, thus recognizing that the statute, if enacted, is controlling.” (Emphasis added.) Beck v. Fetters, 137 Kan. 750, 752, 22 P.2d 479 (1933); see K.S.A. 21-5103(a) (recognizing the criminal code did not entirely displace common law; “where a crime is denounced by any statute of this state, but not defined, the definition of such crime at common law shall be applied”). Kansas cases predating Chronister largely reflect this reasoning.
The historical context begins as early as 1855 when the Kansas Territorial Legislature curbed judicial sentencing discretion, requiring a judge to impose consecutive sentences if the defendant had been “convicted of two or more offences before sentence shall have been pronounced upon him for either offense.” 1855 Laws of the Kansas Territory, ch. 54, sec. 9. The statute was otherwise silent about the power to impose consecutive sentences.
In 1907, in State v. Finch, 75 Kan. 582, 89 P. 922 (1907), this court considered tire effect of such a legislative silence. The version of the statute then in place required consecutive sentences if a defendant had been convicted of two offenses during the same court term. A defendant objected when a sentencing judge imposed consecutive terms of imprisonment for convictions entered in different court terms, arguing a consecutive sentence could only be imposed under the circumstances specifically covered by the statute. Noting the statutory silence about his situation, the defendant argued that at common law only a concurrent sentence would be allowed.
The Finch court did not accept this interpretation of the common law and, despite the lack of statutory authority for the consecutive nature of the sentence, affirmed the sentencing judge’s order of consecutive sentences. The court reasoned that the statute reflected “the legislative policy and the justice of adapting the punishment to the number as well as to the enormity of crimes committed by one person, and, without regard to strict technicality, it is incumbent upon the courts of the state so to conform the pro *275 cedure as to make the purpose of the law effective.” Finch, 75 Kan. at 584; see Beck, 137 Kan. at 752; see also K.S.A. 21-4601 (“This [sentencing] article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics . . . [and] dangerous offenders shall be correctively treated in custody for long terms as needed.”). Hence, although the statute addressed only a limited circumstance—one that did not apply to the defendant’s case—the court extended the legislative policy of using consecutive sentences to fit the enormity of the criminal acts and, in doing so, implicitly recognized a judge’s common-law authority.
In 1923, the legislature enacted R.S. 62-1512, which mandated consecutive sentences when a defendant had been “convicted of two or more offenses before sentence shall have been pronounced upon him for either offense.” In Beck, 137 Kan. at 752, this court explained that this statute modified the common-law rule that had provided “that if several sentences of imprisonment are imposed upon a person, covering the same period of time, they will run concurrently unless the court expressly directs that they be served consecutively.” The court held a “court must render judgment in conformity with the statutory policy” and impose consecutive sentences as required by the statute. 137 Kan. at 752-53. Nevertheless, the court expressly recognized the common law would have applied in the absence of statute.
Then, in 1969, the legislature adopted K.S.A. 21-4608. L. 1969, ch. 180, sec. 21-4608. As with its predecessor statutes, it did not address all sentencing situations where cumulative punishment might be considered. Where the previous statutes had mandated cumulative punishment in some circumstances, the 1969 version reinstated a judge’s discretion to impose either concurrent or cumulative punishments when a sentence was imposed on the same day. In effect, this clarified that the mandate of the statutes at issue in Finch and Beck had been repealed. As in this case, the statute did not address tire power to impose consecutive sentences in cases where sentencing occurred on different days. K.S.A. 21-4608.
Despite this silence, in Burns v. State, 215 Kan. 497, 500, 524 P.2d 737 (1974), this court recognized “[t]he authority of the court *276 in ordering consecutive or concurrent sentences for convictions of two or more offenses at the same time or separate times is discre-tionaiy with the court.” (Emphasis added.) 215 Kan. at 500 (citing K.S.A. 1973 Supp. 21-4608). This statement seems to continue the longstanding recognition that a judge retains discretion to impose a consecutive sentence in situations where a statute is silent, as long as that authority is consistent with the legislative policy reflected in the sentencing statutes. Indeed, in State v. Reed, 237 Kan. 685, 687, 703 P.2d 756 (1985), this court recognized that during this time period, “the imposition of concurrent or consecutive sentences in all criminal cases was placed within the sound discretion of the trial court.” (Emphasis added.)
In 1982, the legislature turned to a middle ground regarding judicial discretion, enacting several provisions codified in subsections of K.S.A. 21-4608 that require a judge to impose a consecutive sentence in specific situations—e.g., when a defendant commits a new crime while incarcerated or on probation, assignment to a community corrections program, parole, or conditional release. K.S.A. 21-4608. The 1982 amendments also contained provisions requiring judges to impose a consecutive sentence if a defendant committed a new crime while on bond in certain specified circumstances. These are the provisions discussed in Chronister, 21 Kan. App. 2d at 593 (citing Reed, 237 Kan. 685, and pre-1982 K.S.A. 21-4608), and, although somewhat modified, that apply in this case.
These provisions were “somewhat ambiguous and . . . neglected to explicitly include” the situation that arose in Reed, 237 Kan. at 688-89. Reed was released on bond prior to trial. While released, Reed committed a theft and a burglary, and the district court held the statute mandated consecutive sentences. This court affirmed, even though the statutes did not explicitly refer to pretrial bond situations. In reaching this decision, this court concluded that the legislature intended to “cover the waterfront” of situations where a defendant committed a crime while temporarily released from custody. 237 Kan. at 688. The court held that the legislative scheme mandated a consecutive sentence even though the mandate was not explicit. 237 Kan. at 688-90. Logically, Reed supports Chron-ister: Statutoiy silence as to a unique circumstance does not mean *277 a sentencing judge does not have consecutive sentencing authority. In Reed, as in Finch, this court considered a judge’s common-law authority to impose a consecutive sentence when it would further legislative policy. In Reed, this meant the legislature had restricted the judge’s authority whereas in Finch it meant the legislature had not limited discretion.
As Chronister and these other cases recognize, nothing suggests the Kansas Legislature ever intended to strip sentencing judges of their common-law power to impose a consecutive sentence. At most, the histoiy suggests the legislature has at times directed a sentencing judge to impose a consecutive sentence in certain circumstances. But the common-law power to impose a consecutive sentence has been abrogated only when a statute addressing a situation has been adopted, and no such statute applies here. Even if K.S.A. 21-4608(h) is interpreted as applying, it does not require a concurrent sentence; it merely indicates the judge “may” impose one.
1.7. Post-Chronister cases supporting Quested’s position are distinguishable
As previously noted, Quested relies on Crawford, decided 13 years after Chronister. In Crawford, a Court of Appeals panel addressed a different situation and held that there was no statutory authority to impose an adult sentence consecutive to a juvenile adjudication. Crawford, 39 Kan. App. 2d 897, Syl. ¶ 2. The panel relied heavily on this court’s decision in In re W.H., 274 Kan. 813, 817-18, 57 P.3d 1 (2002), in which we declined to find any common-law power to order consecutive sentences in juvenile cases given that “[njowhere in [the Kansas Juvenile Justice Code (KJJC), K.S.A. 38-1601 et seq.] did the legislature provide for consecutive sentencing.” 274 Kan. at 822. In rejecting common-law power, we spoke in broad terms about a Kansas judge’s sentencing authority, noting: “From its early beginnings, Kansas relied upon statutory authority to impose consecutive sentencing even though Kansas may recognize that a court had the common-law authority to impose consecutive sentences.” 274 Kan. at 817.
*278 To take this broad statement at face value and view it in isolation could lead to a misunderstanding of the degree of reliance on statutory authority. As our discussion of past cases reflects, the reliance has not meant that there must be explicit statutory authorization to impose a consecutive sentence. Rather, it has often meant that the power to impose a consecutive sentence continues to exist as long as its exercise is consistent with legislative enactments.
Further, the In re W.H. court itself noted its reasoning was limited to the situation involving a young adult offender and, in doing so, expressly distinguished that case from the situation currently before us. The court distinguished the juvenile sentencing scheme, which in large part had no common-law counterpart, from the adult scheme. Specifically, the court acknowledged that in adult sentencing situations the legislature had recognized consecutive sentences, at least in some situations. 274 Kan. at 814-15. And the court did not reverse or question past decisions such as State v. Reed, 237 Kan. 685, 703 P.2d 756 (1985), where this court had mandated the use of consecutive sentences despite legislative silence. Moreover, the In re W.H. court was particularly persuaded by another fact that makes Quested’s case distinguishable: “Kansas has ... no histoiy of court decisions with legislative acquiescence supporting an implied power to impose consecutive [juvenile] sentences where the statute is silent.” 274 Kan. at 818. The court in In re W.H. had no case that recognized any authority, common law or otherwise, for imposing consecutive juvenile sentences.
Here, we have at least 20 years of legislative acquiescence since Chronister, 21 Kan. App. 2d 589, and nearly or over a century’s since Beck, 137 Kan. at 752, and Finch, 75 Kan. at 584. The doctrine of stare decisis is particularly compelling in cases where, as here, the legislature is free to alter a statute in response to court precedent with which it disagrees but declines to do so. Indeed, in Beck this court acknowledged the legislature’s power to curb judicial sentencing discretion through explicit statutes. Beck, 137 Kan. at 752. But beginning with Finch, the court recognized that a legislative restriction on sentencing authority in one situation did not foreclose the continued exercise of discretion in another, un *279 less, as in Reed, exercising discretion would be against legislative policy.
The legislature’s continued, long-term acquiescence is a strong indication that the Chronister court effected legislative intent when it determined the legislature meant for Kansas judges to have the discretion to impose consecutive sentences when a defendant commits crimes in multiple counties. See State v. Williams, 298 Kan. 1075, 1079, 319 P.3d 528 (2014); Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. _, 134 S. Ct. 2398, 2411, 189 L. Ed. 2d 339 (2014); but see U.S.D. No. 501 v. Baker, 269 Kan. 239, 246-47, 6 P.3d 848 (2000) (recognizing that legislative inaction is not always indicative of legislative intent).
Hence, our situation is distinguishable from juvenile offender situations in In re W.H. and Crawford, and those cases do not compel us to reject Chronister or its reasoning. Quested has not persuaded us we should abandon that precedent.
1.8. Osbey and legislative history
Although not cited by Quested, the dissent points us to a line of cases beginning with State v. Osbey, 238 Kan. 280, 288, 710 P.2d 676 (1985), in which this court, without citation to any authority, announced that “[i]n Kansas, sentencing of an individual is strictly controlled by statute.” That statement seems contrary to the cases we have discussed today where a judge’s common-law authority has filled gaps in legislation. Moreover, the legislature has itself declared: “The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state.” K.S.A. 77-109. Because statutory silence confronted both the sentencing court and this court, the sentencing statutes stand in need of the aid of common-law rules. See Setser v. United States, 566 U.S. _, 132 S. Ct. 1463, 1467, 182 L. Ed. 2d 455 (2012) (recognizing that someone must answer the question of whether a defendant’s multiple sentences will be served consecutively or concurrently and there must be some source for the authority to make that decision).
*280 Thus, Osbey’s statement that sentencing is strictly controlled by statute is suspect insofar as its simplicity fails to expose nuance. Even so, the intent of that statement remains valid because, as our discussion illustrates, we have measured the common-law rule against legislative policy. Common-law rules can only apply when consistent with other sentencing statutes. Statutory policy has always controlled. And where a statute covers a subject, these cases illustrate that a judge may not rely on the common law for contrary authority.
These principles are consistent with the outcome and the general rationale of this court’s decisions in those cases where we have stated diat sentencing is strictly controlled by statute. Often these cases dealt with statutes that explicitly covered a sentencing issue. For example, in Osbey and many of the other cases, the issue related to whether a disposition was legal, a subject Osbey correctly noted was covered by statute. See State v. McCarley, 287 Kan. 167, 176, 195 P.3d 230 (2008) (sentence for a level 8 person felony does not conform to the statutoiy provision for a level 5 person felony, the offense of conviction, and is therefore illegal); State v. Martin, 285 Kan. 735, 738-39, 175 P.3d 832 (2008) (K.S.A. 2005 Supp. 21-4716 controls procedure for departing from presumptive sentence); State v. Campbell, 273 Kan. 414, 421, 44 P.3d 349 (2002) (K.S.A. 2001 Supp. 21-4603d dictates allowable dispositions at time of sentencing and does not allow a judge to “intentionally or inadvertently fail to impose one of the statutory dispositions”); Osbey, 238 Kan. at 287 (same).
The other cases deal with a sentencing court’s power to modify sentences. In those cases, the court reasoned statutes limited the court’s power, allowing only the correction of arithmetic and clerical errors. Also, the legislative background of the current sentence-modification statute revealed the legislature’s intention to repeal and not replace statutes that had allowed a modification within a specified time of the sentence’s imposition. See State v. Anthony, 274 Kan. 998, 1000-02, 58 P.3d 742 (2002); see also State v. Guder, 293 Kan. 763, Syl. ¶ 1, 267 P.3d 751 (2012) (following Anthony); State v. McKnight, 292 Kan. 776, 781-83, 257 P.3d 339 (2011) (at probation revocation hearing, sentencing judge had statutory au *281 thorily to modify original sentence and impose shorter sentence with no postrelease supervision); State v. Saft, 244 Kan. 517, Syl. ¶ 1, 769 P.2d 675 (1989) (statute in effect set a temporal cutoff for modifying sentence and limited court’s ability to do so outside that time frame); State v. Vanwey, 262 Kan. 524, Syl. ¶ 4, 941 P.2d 365 (1997) (same).
The rationale of these decisions is largely consistent with the rationale of our decision today. If a statute covers a subject matter, it controls. Further, any common-law rule contrary to legislative policy is invalid even if a statute is silent on the subject matter— e.g., in a situation such as in Beck, 137 Kan. 750, or Anthony, 274 Kan. 998. But to say that statutes control sentencing to the total exclusion of common law is contrary to the cases we have discussed, to K.S.A. 77-109, and, as we will next discuss, to the legislative history and background of K.S.A. 21-4608 and the sentencing guidelines.
Speaking of the 1969 codification of the criminal law that included K.S.A. 21-4608, Professor Paul E. Wilson, who was on the Judicial Advisory Committee that worked on the codification, explained the common law’s influence in the new criminal code:
“The legislature alone has the power to prohibit and provide penalties for conduct that is deemed inimical to the best interests of the State. At the same time, the common law has played an important role in determining the substance of the criminal law of Kansas. While the legislature has the exclusive power to prohibit conduct, the prohibitions are often stated in terms of common law concepts. Thus, reference must often be made to the common law in order to understand legislative intent.” Wilson, New Bottles for Old Wine: Criminal Law Revision in Kansas, 16 Kan. L. Rev. 585 (1968).
With respect to sentencing, Professor Wilson observed: “The view has been taken that the fixing of sentence is a judicial function over which the court should have the ultimate control, within the limits fixed by the legislature.” (Emphasis added.) 16 Kan. L. Rev. at 603. As applicable to Quested’s case, the legislature has not stated a limit on the cumulative length of his multiple sentences.
To suggest the common law has no role in sentencing, the dissent cites a 1972 law review article in which the author, Barkley Clark, observed: “The comprehensiveness of the state Criminal *282 Code, coupled with the elaborate procedural safeguards given to defendants by the equally comprehensive Code of Criminal Procedure, suggests that the legislature has preempted the criminal law field, except for matters such as minor traffic violations.” State Control of Local Government in Kansas: Special Legislation and Home Rule, 20 Kan. L. Rev. 631, 672 (1972). But this article spealcs to an issue that has no bearing on our analysis—the power of cities to enact ordinances that might conflict with state criminal law. In context, the comment does not suggest the legislature intended for the 1969 criminal code to leave no place for the common law nor does it purport to rebut the legislative history and comments of Professor Wilson, one of the bill’s drafters.
Further, the legislative history surrounding the existence of the Kansas Sentencing Guidelines reinforces that statutoiy law does not strictly control sentencing to the exclusion of a judge’s discretion when that discretion is not limited by a statute; a sentencing court can, and sometimes must, do more than simply look to the statutes. Granted, the legislature clearly expressed the intent to curtail some judicial discretion, which had resulted in sentencing disparity. See Minutes, Senate Judiciary Committee, S.B. 479, January 14, 1992 (Attachment 1); see also Minutes, Senate Judiciary Committee, S.B. 479, January 16, 1992 (Attachment 1 [Gottlieb, A Review and Analysis of the Kansas Sentencing Guidelines, 39 Kan. L. Rev. 65, 67 (1991)]); Minutes, House Judiciary Committee, March 18, 1992 (Attachment 2) (noting it is well known that a crime committed in some counties will receive a harsh punishment while the same crime will get probation in another county).
At the same time, however, there was much debate about how strictly a sentencing judge’s discretion should be curbed and how much legislative “control” should be exercised over a sentence. Those in favor of the guidelines argued: “The existence of definite sentencing standards eliminates unstructured judicial discretion which, it is argued, produces unwarranted disparity.” Gottlieb, 39 Kan. L. Rev. at 67. On the other hand, “[i]t will be a mistake . . . to eliminate judicial discretion.... [I]f sentencing is to be humane, it will continue to require human judgment.” 39 Kan. L. Rev. at 89.
*283 In the end, although the legislature considered exercising complete control over sentencing, it decided to alleviate opponents’ concerns by assuring that sentencing discretion remained—sentences were not subject to absolute statutory control. Indeed, on January 24, 1992, the Senate Judiciary Committee made it a point to add language to the minutes (possibly in response to a request for a clear statement of legislative intent) indicating: “[T]he Committee recognizes that the guidelines are designed to regulate judicial discretion, not to eliminate it.” (Emphasis added.) Minutes, Senate Judiciary Committee, S.B. 479, January 24, 1992. This understanding also permeated the later hearings before the House Judiciary Committee. Minutes, House Judiciary Committee, S.B. 479, March 20, 1992 (Attachment 1, p. 5.) (“The sentencing function of the court was intended to be discretionary. . . . Certainly the legislature must give guidance to the courts by establishing the public policy and perimeters on sentences. However, when those perimeters become too restrictive to adapt the sentence to the characteristics of an individual case, substantial injustices will occur.”).
Although we find no clear legislative history discussing the legislature’s intent regarding whether a judge retained the authority to impose consecutive sentences in situations not controlled by the statute, courts generally presume that the legislature acts with full knowledge of existing law. State v. Reese, 300 Kan. 650, 656, 333 P.3d 149 (2014). That law includes the common-law rule recognizing that a sentencing judge has the discretion to decide whether to impose a concurrent or a consecutive sentence and the caselaw of this court in which we have filled the gap in previous statutes by allowing the exercise of that common-law authority when doing so was consistent with the legislative policy. Further, as this court recognized in State v. Chronister, 21 Kan. App. 2d 589, 593-94, 903 P.2d 1345 (1995), it is doubtful that the legislature intended to strip courts of the power to impose consecutive sentences in cases such as the present one where crimes were committed in two different Kansas counties. This result would indeed be unreasonable or absurd, and “ ’the legislature is presumed to intend that a statute be given a reasonable construction.’ ” 21 Kan. App. 2d at *284 593; see State v. Murdock, 299 Kan. 312, 320, 323 P.3d 846 (2014) (Rosen, J., dissenting) (explaining that part of the reason tire legislature later enacted the KSGA was “to address concerns regarding disparity in sentencing practices across the state”). This is especially true under the facts of this case where Quested’s criminal acts in Dickinson and Saline counties were related and as part of one crime spree. If convicted in one case for all the crimes, the sentencing judge would have had express authority under K.S.A. 2006 Supp. 21-4720(b) to impose either concurrent or consecutive sentences.
Significantly, K.S.A. 2006 Supp. 21-4720(b) of the KSGA incorporates a few provisions from tire 1969 law, including K.S.A. 21-4608. And when enacting the KSGA, the legislature did not repeal K.S.A. 21-4601, which provides: “This [sentencing] article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics . . . [and] dangerous offenders shall be correctively treated in custody for long terms as needed.” While most provisions of the KSGA do not fall within the scope of this provision, K.S.A. 21-4608 does. And as we have discussed, that provision was applicable at the time of this court’s decisions in Burns v. State, 215 Kan. 497, 500, 524 P.2d 737 (1974), and Reed, 237 Kan. 685.
Arguing for a contrary result, the dissent would hold that a sentencing judge can only impose a concurrent sentence since no statute explicitly authorizes a consecutive sentence. Yet, no statute or prior caselaw directly supports that conclusion. With no statute to construe in Quested’s favor, the rule of lenity—a rule of statutory construction the dissent invoices—plays no part. Even when it does, it is “subject to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent.” See State v. Coman, 294 Kan. 84, 96, 273 P.3d 701 (2012). That design is furthered by allowing a judge to exercise discretion to impose consecutive sentences when a defendant engages in a crime spree in multiple counties, the same as if the defendant were to have committed all the crimes in one county where the case could have been treated as a multiple conviction case under K.S.A. 2006 Supp. 21-4720(b). Moreover, if we were to simply mandate a concurrent *285 sentence when no statute compels that result, we would necessarily have to supply words the legislature did not write. The dissent’s solution thus falls subject to its own criticism, as we would again be at fault for recognizing sentencing authority not “strictly controlled by statute.” See McCarley, 287 Kan. at 176.
1.9. Conclusion
We choose, in the absence of a statute directly speaking to the issue, to rely on over a century of this court’s caselaw regarding adult criminal sentencing in which this court has recognized that Kansas judges have the discretion to order either a consecutive or concurrent sentence as long as doing so is consistent with legislative policy. Historical perspective and practical necessity compel us to rely on common law in this limited and unique circumstance.
We hold that a sentencing judge in one Kansas county has the authority to order a sentence to be served consecutive to a sentence previously imposed by a sentencing judge in another Kansas county. We, therefore, agree with the Court of Appeals’ decision to affirm the district court’s denial of Quested’s motion to correct an illegal sentence.
Affirmed.
Michael J. Malone, Senior Judge, assigned.