NOT DESIGNATED FOR PUBLICATION

No. 113,896

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EZEKIEL RHOTEN,
*Appellant.*


MEMORANDUM OPINION


Appeal from Sedgwick District Court; DOUGLAS R. ROTH, judge. Opinion filed July 22, 2016. Vacated and remanded with directions.

*Carl F.A. Maughan* and *Sean M.A. Hatfield*, of Maughan Law Group LC, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., LEBEN, J., and JOHNSON, S.J.


LEBEN, J.: Ezekiel Rhoten is serving a 100-month prison sentence on convictions for aggravated burglary and robbery. He filed a motion in the district court to correct his sentence, arguing that some of his past convictions had been improperly classified as person crimes, which made his presumptive prison sentence longer under our state's sentencing guidelines. The district court denied the motion, and Rhoten appealed to our court.

On appeal, the State concedes that if we reach the merits of Rhoten's claim, he's "likely" right—two of his past convictions wouldn't be classified as person offenses if we apply the ruling of our Supreme Court in *State v. Dickey*, 301 Kan. 1018, 1036-40, 350 P.3d 1054 (2015). But the State argues that we should: (1) conclude that we have no jurisdiction to consider Rhoten's claim; (2) conclude that Rhoten waived his claim by failing to make it on direct appeal; or (3) find that *Dickey* created a new rule that applies only to future cases. (Rhoten's conviction and sentencing took place in 2012, 3 years before *Dickey*, so the State argues that we cannot apply it to Rhoten's sentencing.)

We disagree with the State on each of these points. First, we have jurisdiction over Rhoten's claim because a Kansas statute, K.S.A. 22-3504, specifically allows a motion to correct an illegal sentence to be made "at any time." And the *Dickey* court held that a motion under K.S.A. 22-3504 is an appropriate way to challenge whether a defendant's criminal-history score was incorrectly determined. Second, since K.S.A. 22-3504 motions may be brought at any time, Rhoten's failure to raise the claim on direct appeal doesn't matter. Third, *Dickey* was just an application of the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and a later decision applying *Apprendi*, *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). Thus, because *Dickey* did not announce a new rule, it can be applied in motions involving convictions that took place before *Dickey* and that were already final when the motion was filed.

We therefore reach the substance of Rhoten's claim. We find that it has merit, so we vacate his sentence and remand the case for resentencing. In the remainder of the opinion, we will provide more detailed support for our conclusions.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2012, Rhoten pled no contest to one count of aggravated burglary and one count of robbery. At sentencing, the district court found that Rhoten had a criminal-history score of A, the most serious of nine potential scores, based in part on two 1985 Kansas burglary convictions that were classified as person felonies. Given the primary offense (aggravated burglary) and Rhoten's criminal-history score, his presumptive guidelines sentencing range for the aggravated burglary was 122 to 136 months in prison.

In exchange for Rhoten's plea, the State agreed to recommend that the district court impose a decreased prison sentence of 100 months—what's known as a downward-durational-departure sentence, since the sentence departs downward from the guideline range. At sentencing, the State made that recommendation, while Rhoten argued for the sentence to be reduced further (to 75 months) or for probation. The district court denied Rhoten's requests and followed the State's recommendation, imposing a 100-month sentence with 24 months of postrelease supervision.

Rhoten appealed his sentence but voluntarily dismissed that appeal in August 2013.

Nine months later, in May 2014, Rhoten filed a motion to correct an illegal sentence, arguing that his criminal-history score had been incorrectly calculated under *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). In October 2014, he filed another motion to correct an illegal sentence, that time arguing that his criminal-history score had been incorrectly calculated under *Dickey*. In January 2015, the district court denied Rhoten's motions without a hearing.

Rhoten then appealed to this court.

3

Rhoten argues that the district court wrongly calculated his criminal-history score (making his sentence illegal) because it classified his two 1985 burglary convictions as person felonies rather than nonperson felonies as *Dickey* required. If those convictions are reclassified as nonperson offenses, Rhoten's criminal-history score would drop from A to B, and his presumptive guidelines sentence range for the aggravated robbery would be 114 to 128 months rather than 122 to 136 months. (Rhoten has abandoned his *Murdock* argument on appeal, presumably because *Murdock* has been overruled and is no longer good law. See *Keel*, 302 Kan. at 589-90.)

In our review, whether on the State's procedural arguments or on the merits of Rhoten's motion, the questions presented are legal ones that we must review independently, without any required deference to the district court. See *State v. Looney*, 299 Kan. 903, 906, 327 P.3d 425 (2014) (jurisdiction); *State v. Robertson*, 298 Kan. 342, 344, 312 P.3d 361 (2013) (res judicata); *State v. Luarks*, 302 Kan. 972, 975-76, 360 P.3d 418 (2015) (motion to correct illegal sentence).

*The State's Procedural Arguments*

Before we get to the merits of Rhoten's claim, we must first determine whether we can hear his appeal at all. The State argues that we lack jurisdiction under K.S.A. 22-3504 because Rhoten is challenging his sentence on constitutional grounds, and our Supreme Court has said, as a general matter, that defendants can't use K.S.A. 22-3504 to challenge their sentences on constitutional grounds. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016); *State v. Warrior*, 303 Kan. 1008, 1009-10, 368 P.3d 1111 (2016). But, as the State also recognizes, our Supreme Court allowed a claim just like Rhoten's to be heard on its merits in *Dickey*.

Any analysis of K.S.A. 22-3504 must begin with the statute's terms: "The court may correct an illegal sentence at any time." The Kansas Supreme Court has confined "illegal sentence" as used in this statute to three situations: "'(1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in the character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served.'" *Makthepharak v. State*, 298 Kan. 573, 578, 314 P.3d 876 (2013); *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013). And in *Dickey*, the court said defendants can use K.S.A. 22-3504 to challenge their criminal-history scores because such a challenge meets the second definition of an illegal sentence: it's a claim that a sentence doesn't conform to the applicable statutory provision. *Dickey*, 301 Kan. at 1034 (citing *State v. Neal*, 292 Kan. 625, 631, 258 P.3d 365 [2011]). The State argues that *Dickey* and *Neal* should be overruled; our court, of course, does not overrule Kansas Supreme Court rulings.

*Dickey* held that when a constitutional challenge impacts a defendant's criminal-history score, the challenge is within the strict definition of an illegal sentence because if the criminal-history score is wrong, the sentence no longer complies with the sentencing statutes. *Dickey*, 301 Kan. at 1034 (citing *Neal*, 292 Kan. at 631); see also *State v. Vasquez*, 52 Kan. App. 2d 708, 712-14, 371 P.3d 946 (2016) (distinguishing claim that a sentencing statute is unconstitutional from a claim that a constitutional error caused an incorrect criminal-history score and illegal sentence); *Luarks*, 302 Kan. at 975-76. Accordingly, we have jurisdiction to consider Rhoten's claim.

The State also argues that Rhoten's claim is barred by the legal doctrine called "res judicata." In Latin, the phrase means "a thing adjudicated," and in legal doctrine, it means that once a person has raised a particular issue before the court and the court has ruled on that issue, that person isn't allowed to raise the same issue again. Black's Law Dictionary 1504 (10th ed. 2014); see *Robertson*, 298 Kan. at 344. Most of the time, res judicata also

bars a party from raising a claim that *could* have been raised in a previous case but wasn't. *State v. Martin*, 294 Kan. 638, 640-41, 279 P.3d 704 (2012); *State v. Conley*, 287 Kan. 696, 698, 197 P.3d 837 (2008). The State argues that since Rhoten didn't make this argument in his direct appeal, he has waived it.

But res judicata only applies to motions to correct an illegal sentence if the claims made in the motion were *actually raised* and ruled on in a previous case—it doesn't apply if the defendant hasn't brought the claims before. *State v. Martin*, 52 Kan. App. 2d 474, 480-82, 369 P.3d 959 (2016), *petition for rev. filed* May 5, 2016; see *Neal*, 292 Kan. at 631 ("[T]he motion to correct illegal sentence is not subject to our general rule that a defendant must raise all available issues on direct appeal."); *Angelo v. State*, No. 109,660, 2014 WL 1096834, at *3 (Kan. App. 2014) (unpublished opinion), *rev. denied* 301 Kan. ___ (January 8, 2015). The plain language of K.S.A. 22-3504 carves out this exception to res judicata: "The court may correct an illegal sentence *at any time*." (Emphasis added.) Thus, while K.S.A. 22-3504 "'may not be used as a vehicle to breathe new life into appellate issues previously abandoned or adversely determined,'" *Conley*, 287 Kan. at 698 (quoting *State v. Johnson*, 269 Kan. 594, 602, 7 P.3d 294 [2000]), applying res judicata when the illegal-sentence claim hasn't been brought before would undermine the clear language and purpose of K.S.A. 22-3504. *Vasquez*, 2016 WL 1728688, at *4; see *Cain v. Jacox*, 302 Kan. 431, Syl. ¶ 3, 354 P.3d 1196 (2015) (holding that courts applying res judicata "must be mindful of the equitable purposes animating the doctrine"). So Rhoten's claim is not barred by res judicata.

The State's third procedural argument is that the *Dickey* ruling, issued in 2015, can't be applied to Rhoten, who was convicted and sentenced in 2012. As the State correctly notes, Rhoten's motion to correct an illegal sentence is what's known as a "collateral" attack, which is a challenge to a conviction or sentence that is brought after the conviction and sentence have become final. They become final at the end of a defendant's initial direct appeal, if one is filed. Rhoten did file an appeal, but he

6

voluntarily dismissed it in August 2013. So his conviction and sentence became final in August 2013, well before the 2015 *Dickey* ruling. The State argues that the *Dickey* ruling can't be applied to Rhoten's case.

Both the finality of criminal judgments and fairness to defendants are at issue here in this specific context—when court decisions have announced a new rule in the law. On one hand, we have a strong interest in the finality of criminal judgments. We don't lightly try cases over again, especially when many years may have passed and witnesses and other evidence may have become unavailable. On the other hand, we want to be fair to defendants and consider any valid legal arguments they might raise. The United States Supreme Court and the Kansas Supreme Court have balanced these interests in the context of judicial decisions that announce a new rule: That new rule is applied to all cases that are then on direct appeal—but *not* to cases that have already become final. Thus, a truly new rule won't benefit the defendant who is raising a collateral attack on a criminal conviction or sentence after having already concluded (or waived) the direct appeal. *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987); *State v. Mitchell*, 297 Kan. 118, Syl. ¶ 3, 298 P.3d 349 (2013).

To figure out whether the *Dickey* ruling applies to Rhoten's motion to correct an illegal sentence, which is a collateral attack, we must determine whether *Dickey* announced a new rule. "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) (plurality opinion). *Dickey* didn't announce a new rule; it applied a constitutional rule announced by the United States Supreme Court in its 2000 decision in *Apprendi*. *Apprendi did* announce a new rule. Accordingly, its ruling has been applied only to cases pending and not yet final when it was announced or to future cases. *State v. Gould*, 271 Kan. 394, 414, 23 P.3d 801 (2001); *Vasquez*, 52 Kan. App. 2d at 714; *Martin*, 52 Kan. App. 2d at 484. Rhoten's case arose many years after *Apprendi*, so we apply its rule to him. And while *Dickey* also

7

discussed another United States Supreme Court case that arose *after* Rhoten's conviction had become final, the 2013 decision in *Descamps*, that case simply *applied Apprendi*; it did not announce a new rule. *Vasquez*, 52 Kan. App. 2d at 713; *Martin*, 52 Kan. App. 2d at 484. We therefore apply *Dickey* to Rhoten's case.

The State also briefly suggests that because Rhoten originally bargained for and received a downward-durational-departure sentence (100 months when the standard sentence was greater), we shouldn't consider his illegal-sentence claim or apply *Dickey*. The State cites no authority for this proposition. *Cf. State v. Quested*, 302 Kan. 262, Syl. ¶ 1, 352 P.3d 553 (2015) ("An appellate court has jurisdiction to correct an illegal sentence even if a defendant bargained for the sentence as part of a plea agreement."). The State is correct that the 100-month sentence he received is still lower than the guidelines sentencing range that would apply if his criminal-history score were reduced from A to B. But courts can correct an illegal sentence at any time, even if it results (or could result) in a higher sentence for a defendant. See *State v. McCarley*, 287 Kan. 167, 175, 195 P.3d 230 (2008) (holding that the State can challenge a sentence as illegal even if it results in a more severe sentence for the defendant). So it's just not relevant to the illegal-sentence inquiry that Rhoten's original departure sentence is lower than the presumptive range that will apply at his resentencing. He is entitled to be sentenced with the correct criminal-history score and presumptive sentencing range to guide the sentencing judge.

With the State's procedural objections out of the way, we move now to the merits of Rhoten's claim.

*The Merits of Rhoten's Claim*

To consider the merits of Rhoten's claim, we will need to compare the *Dickey* case with Rhoten's, while keeping in mind the standards set out in *Apprendi*. Ultimately we

8

must consider whether his sentence is illegal because his prior convictions were not properly classified as person crimes.

In *Dickey*, the defendant pled guilty to felony theft, and the district court scored his 1992 juvenile adjudication for burglary as a person felony. The defendant argued on appeal that this classification violated his Sixth Amendment rights under *Apprendi* and *Descamps*.

*Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Descamps* was primarily about the interpretation of a specific federal sentencing statute, but it applied this principle from *Apprendi* when it explained how a federal sentencing court should compare prior-conviction statutes to generic offenses when determining whether the prior conviction is a violent felony that will increase a defendant's sentence. 133 S. Ct. at 2281, 2288. Generally, a federal sentencing court can only compare the *elements* of the relevant statutes and cannot look at the *actual facts* underlying the prior conviction because doing so could result in the sentencing court finding sentence-enhancing facts (that a prior felony conviction was a "violent felony," for example) that weren't proved to a jury beyond a reasonable doubt (violating *Apprendi*). 133 S. Ct. at 2281-82. The sentencing court can only consider the actual facts of the prior crime (using documents such as indictments or jury instructions) when the prior-conviction statute is divisible— that is, when it sets forth alternative elements of a given crime. In other words, when the prior crime could have been committed in more than one way, the sentencing court is allowed to find out how it was committed and therefore which elements of the prior-conviction statute were applied to the defendant. 133 S. Ct. at 2281. The court can then compare the relevant elements of the prior-conviction statute to the generic offense and decide, based purely on these statutory elements, if the prior conviction was a violent felony that would increase the sentence. 133 S. Ct. at 2285.

In *Dickey*, the Kansas Supreme Court determined that *Apprendi*, as explained in *Descamps*, applies to the Kansas Sentencing Guidelines Act because the Act requires the court to classify prior convictions as person or nonperson crimes, which puts the court at risk of finding a fact about a prior conviction—that it was a person crime—that will increase a defendant's sentence but wasn't proved to a jury beyond a reasonable doubt. See *Dickey*, 301 Kan. at 1039; K.S.A. 2015 Supp. 21-6809 (three person felonies results in a criminal-history score of A, two results in a criminal-history score of B, and one results in a C or D); K.S.A. 2015 Supp. 21-6811(d) and (e) (the facts required to classify prior burglary convictions and prior out-of-state convictions shall be established by the State by a preponderance of the evidence). For burglary in particular, "dwelling" is the statutory element that determines the person or nonperson classification. K.S.A. 2015 Supp. 21-6811(d); K.S.A. 2015 Supp. 21-5807(a).

The burglary statute in effect when Dickey committed his prior burglary didn't require evidence that the burglarized structure was a dwelling. *Dickey*, 301 Kan. at 1039. Because the prior burglary statute didn't contain a dwelling element, determining whether the defendant's prior burglary actually involved a dwelling at the criminal-history stage "would necessarily involve judicial factfinding that goes beyond merely finding the existence of a prior conviction or the statutory elements constituting that prior conviction." 301 Kan. at 1021. Therefore, the *Dickey* court concluded that "classifying [the defendant's] prior burglary adjudication as a person felony violates his constitutional rights as described under *Descamps* and *Apprendi*." 301 Kan. at 1021.

Here, just like in *Dickey*, the burglary statute in effect in 1985 didn't include a "dwelling" element: burglary was "knowingly and without authority entering into or remaining within any building, mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein." K.S.A. 21-3715 (Ensley 1981).

10

So to classify Rhoten's 1985 burglary convictions as person crimes, the district court necessarily found that those prior convictions involved a "dwelling," which is a fact only a jury can find under *Apprendi* because it is the fact that makes burglary a person crime and increases a defendant's sentence. *Dickey*, 301 Kan. at 1039-40; see *State v. Cordell*, 302 Kan. 531, 531-32, 354 P.3d 1202 (2015) (finding a 1986 burglary conviction should have been classified as a nonperson crime under *Dickey*). Under *Dickey*, Rhoten's 1985 convictions should have been classified as nonperson felonies.

We vacate Rhoten's sentence and remand to the district court with directions to reclassify the two 1985 burglary convictions as nonperson offenses and resentence Rhoten.