PRESENT—HON. S. A. KINGMAN, CHIEF JUSTICE.
HON. JACOB SAFFORD, }
HON. D. M. VALENTINE, } ASSOCIATE JUSTICES.

## THE STATE OF KANSAS v. WM. DICKSON.

1. CONTINUANCE—*Admission of Affidavit in Criminal Cases.* When an affidavit for a continuance on the ground of an absent witness, who is beyond the limits of the State, is filed by the defendant in a criminal case, and the prosecutor for the State consents that the same shall be read in evidence as the statement and testimony of such absent witness, it is proper for the district court having jurisdiction under the provisions of the statute, to refuse the application and direct the trial to proceed.

2. JURYMEN—*Excusing.* It is within the discretion of the court having jurisdiction to excuse persons summoned upon juries from serving in any particular case, upon application being made for such excuse; and unless it is shown that such discretion has been abused, a reviewing court will not interfere.

3. WITNESSES—*Names on Information.* It is not error to permit a witness on the part of the State in a criminal prosecution, and whose name has become known to the prosecutor after the commencement of the trial, to testify, even though the name of such witness has not been indorsed upon the information at all.

4. MISCONDUCT OF JUROR—*When not cause for New Trial.* Misconduct of a juror on the trial of a criminal cause, which does not prejudice the defendant, will not of itself justify the supreme court in reversing a judgment of conviction.

5. INSTRUCTIONS OF COURT—*When not prejudicial.* Instructions are to be considered and construed together, as a whole; and if not erroneous when so construed, no one of them will be held to be erroneous. And when the instructions complained of relate to a degree of crime inferior to the principal offense charged in the information, and inferior to that of which the defendant is convicted, they will be deemed not to have prejudiced the defendant, whether erroneous or not.

6. JURY—*Inattention of.* The inattention, or misapprehension of a portion of the jury, with respect to the charge and instructions of the court, is not ground for a new trial; and the affidavit of a juror that he did not hear certain instructions which were given by the court, will not be received in support of a motion for a new trial.

*Appeal from Criminal Court of Leavenworth.*

WILLIAM DICKSON was charged by information filed in the criminal court of Leavenworth county, with the kill-

ing of one Jacob Barnett on the 10th of March, 1870, under such circumstances as to constitute murder in the first degree. At the June Term, 1870, of said court, he was arraigned for trial, and pleaded not guilty. He then applied to the court for a continuance until the next term, and in support of such application he made and submitted an affidavit alleging that one J. S., then in the State of Texas, place unknown, was a material witness for him, and that said witness would testify to certain facts, (which were set forth in the affidavit.)

The county attorney objected to the continuance, but the court held the affidavit sufficient to entitle defendant to a continuance of the cause, whereupon the county attorney stated to the court that he would admit that said J. S., mentioned in the affidavit, would swear to the statements contained in said affidavit, if present, and that said affidavit might be read on the trial as the deposition of an absent witness. Appellant refused to accept the offer, and still insisted upon a continuance of the case. The motion for a continuance was overruled by the court, and the trial was ordered to be proceeded with, and defendant excepted.

Several persons summoned as jurors to try the case were excused without an inquiry before the court into the validity of their excuse; which proceeding defendant assigns as error. Other persons were summoned as jurors in place of those so excused; and a jury was thus obtained, to which no objection appears to have been otherwise made.

On the trial of the case evidence was introduced pertaining to a watch found on the defendant, claimed to have been taken by him from the body of the deceased. The evidence relating to this matter is as follows: The

deputy sheriff testified that "he took from defendant, on his arrest, a watch and pocket-book; that defendant said he got his watch from a man by the name of Smith; that defendant said Smith gave him the watch. Watch was found in defendant's pocket: have kept it in my possession ever since then." (Watch produced by witness and shown to the jury.) *Henry Eatingson* testified that "he saw deceased take out his watch on or about March 10th, 1870, and look for the time of day; that he showed it to witness." (Witness examines the watch testified to by the sheriff, and identifies it as the same one.) *A. Hershfield* testified that on March 9th, 1870, Barnett, (deceased,) tried to pawn this same watch to him. *H. Hoffman* identifies the watch as one that he repaired for deceased. *Libbe Freshman,* with whom deceased boarded, testified that "he knew deceased had a watch—a silver watch." Here a juror rose and said "he thought the watch was sufficiently identified, and it was not necessary to waste any further time on it." All the witnesses named were called by the prosecution.

Defendant's affidavit, abovementioned, was read in evidence as the deposition of an absent witness; and the court instructed the jury that it was to be so regarded.

The court, in instructing the jury, read to them, §§ 6, 7, 9, 10, 11, 16, 18, 26 and 27, of the Crimes Act, Gen. St. 1868, pp. 319 to 323, and then proceeded as follows:

"The law presumes every man, presumes this defendant, to be innocent, until proved to be guilty; and the burden is upon the State to satisfy you of his guilt, beyond a reasonable doubt; and unless you are so satisfied, you must acquit.

"Our statute does not define murder. It divides it into two degrees. It assumes that there is such an offense, and that it is known to the law. What then, is *murder?* The common law, which furnishes the definition, defines

it as follows: 'When a person of sound memory and discretion unlawfully kills any reasonable creature in being, and in the peace of the State, with malice aforethought, either express or implied.' To this common-law definition, in order to canstitute murder in the first degree, the State of Kansas has added the ingredients of deliberation and premeditation.

"To convict in this case of murder in the first degree, it is necessary that you find that Jacob Barnett was killed in the county of Leavenworth, and before the filing of this information; that such killing was done by the prisoner, *William Dickson;* that said Dickson was at that time a person of sound mind, and did the act unlawfully; that the killing was done willfully, that is, purposely and voluntarily; that it was done deliberately and premeditatedly. By *deliberation* is meant, that the act was considered, weighed in the mind, and estimated. By *premeditation*, that it was contrived, planned beforehand.

"The killing must have been intentional, and done in cold blood, and not in the heat of passion. It is not necessary that the purpose to take life be formed days and weeks before the deed. It is sufficient, if while the mind is cool, undisturbed by passion, and with opportunity for reflection, that the purpose be formed, even though but few moments elapse before such purpose be carried into effect.

"Another ingredient necessary for you to find, in order to constitute this offense, is, that it was done with malice aforethought. By malice is meant an unlawful intention to take life, an evil design, the dictate of a wicked and depraved heart. It is not restricted to spite or malevolence toward the deceased in particular; it means the general malignity, and recklessness of life and personal safety of others, which proceed from a heart void of a just sense of a social duty and fatally bent on mischief. Malice, as well as deliberation and premeditation, must be proved by evidence. They do not require positive proof. The testimony may be circumstantial. The facts from which their existence may be inferred, may be very minute or remote; but there must be some evidence establishing their existence.

"Each of these several material ingredients, going to

constitute the offense, must be proved to your satisfaction, beyond a reasonable doubt, before you can convict the defendant.

" Should you find the defendant guilty of the murder of Barnett, without deliberation or premeditation, except in those cases embraced in the statute which I have read to you, the offense would be murder in the second degree."

At the request of the county attorney, the court also gave the following instruction :

" It is not necessary that when a purpose to take life is formed, the particular party who is killed shall be present to the mind of the party accused. It is sufficient if the purpose was formed to kill any one coming along, who presented the opportunity, and inducements to the crime."

The jury returned a verdict of " guilty of murder in the first degree, as charged in the information." A motion for a new trial was made; and in support thereof an affidavit of one of the jurors was offered, stating among other things, that " while said trial was being had, he heard no charge or instructions from the court at any time with regard to the manner the jury should regard the affidavit filed by defendant for a continuance, and read to the jury in evidence." The introduction of this affidavit was objected to by the State, and the objection sustained.

The motion for a new trial was overruled, and the defendant appeals, and brings the case to this court for examination and reversal.

*G. H. English and J. W. Taylor*, for appellant :

1. On first application for a continuance on part of defendant, he is not bound to disclose what facts the absent witness will testify to, nor the name of the witness. If he does state more, (as in this case,) it does not entitle the State to force the defendant into trial by ad-

mitting that the witness, if present, would swear as testified to. Tidd's Pr., 708; 38 Geor., 3; 1 Chitty R., 686, note *a.*; 18 E. C. L., 573; 2 Mart., Lou., 134; 6 Cow., 62; 2 Dall., 146, 383; 9 Pick., 515.

Defendant is entitled to compulsory process to compel attendance of witnesses in his own behalf. This right is absolute, not conditional, and cannot be legislated away. Con. of Kansas, § 10, Bill of Rights; Con. U. S., Amendt. 7; 1 Meigs, 195; 7 Cowan, 369, 400.

The defendant is entitled to be confronted with the witnesses against him, and to confront them with his own witnesses. And to secure this, he is entitled as matter of right to a continuance, if supported by sufficient affidavit, and refusal to grant the same is error. 3 J. J. Marshall, 263; 5 Cow., 15; 7 Johns., 306.

Admitting the affidavit in evidence is a matter of discretion with the county attorney, and not the court. Such admission on part of county attorney is not sufficient to deprive the accused of the right to the presence of his witnesses. 7 Cow., 367, 369, 400; 14 Johns., 341; 9 Ind., 340; 3 Hayw., 145; 1 Scam., 399; 5 Dana, (Ky.,) 298; 30 Geor., 816; 33 Miss., 47.

The accused was denied a fair and impartial trial. He was forced to trial without giving him the best evidence to which he is entitled. Admitting his affidavit, gave the State possession of his facts, with opportunity to deny and disprove them, and to impeach the credibility and the truth of his evidence, with no opportunity on his part to sustain, support, and explain it. Such testimony is comparatively worthless before a jury. The jury almost universally fail to discriminate between the affidavit, "as the deposition of the absent witness," and the statement of the party in his own behalf.

2. The court erred in discharging jurors duly summoned without judicially determining the validity of their excuses. When a talesman is properly summoned, he is then a juryman. Gen. St., 538, § 27; 8 Humph., 600.

The court cannot excuse a juror, unless it "appear that the interest of the juror, or the interests of the public, will be materially injured, or that the state of his own health or that of his family requires his absence." Gen. Stat., 537, § 19; and by excusing these jurors the court assumed the responsibility of arbitrarily discharging jurors, which it is not permitted to do. 1 Ohio St., 66; 2 Mason, 91; 8 Humph., 597; 7 Rich., 412; 2 Arch. Crim. Pl. and Pr., 623.

3. The court erred in permitting witnesses whose names were not indorsed on the information before trial, to testify. Gen. St., 831, § 67; 4 G. Greene, 189; 8 Iowa, 203; 2 Starkie, 158; 3 Eng. Com. Law, 357.

4. The misconduct on the part of the juror complained of, is sufficient to authorize the court to grant defendant a new trial. It manifested prejudice and bias in the mind of the juror against the prisoner, and a violation of his substantial rights. 2 Gra. & Wat., 463, 479; 1 Bay, 373; 2 Morgan, 25.

5. The court in the general charge assumes that a *killing* had been committed; and in the instruction given at the instance of the county attorney, he assumes that a *murder* had been committed; and these are assumptions of fact that the court should not make. *Horn v. The State*, 1 Kas., 42; 2 Hawks, 63; Gra. & Wat., 763, 1268; 12 Ill., 196; 19 Wend., 402; 2 A. K. Marshall, 424; 2 Dana, 395; 10 Gill & Johns., 357; 2 Gill, 129.

When the court assumes any fact as proven, it invades the province of the jury. 1 Kas., 42.

6. The court erred in refusing to receive the affidavit of the juror on the motion for new trial. In criminal cases affidavits of jurors are admissible to show misunderstanding or unintelligibility of charge. 3 Gra. & Wat., 1440; 1 G. Greene, 225; 3 Caines, 57; 15 Johns., 309; 6 N. H., 352.

The court in failing to give instructions so the jury could hear them, erred as if the instructions were not given or refused. 4 Call, (Va.,) 84.

*D. J. Brewer*, county attorney of Leavenworth county, for The State:

1. It was not error for the court to overrule the application for a continuance, upon the admission by the State of defendant's affidavit " as the deposition of an absent witness." Gen. St., p. 854., § 210; p. 689, § 317; *Thompson v. The State*, 5 Kas., 159.

2. The excusing of persons summoned as jurors was a matter within the discretion of the court. They were all talesmen, picked up by the sheriff. The court was aware that the trial must necessarily occupy several days. They were not challenged by the State—were not excused on its motion. They were excused on their own application, because it was apparent they could not attend during the entire trial without injury to their business, or could not *hear* if they did. But if it were, strictly speaking, error, yet the defendant waived it by accepting the jury as it was, while he yet had five peremptory challenges remaining to him. Gen. St. p. 867, § 293; 1 Kas., 470; 2 Kas., 181.

3. There was no error in permitting witnesses to be examined whose names had not been indorsed on the back of the information. The provision of the statute in

regard to indorsing the names on the back of the information is directory. It is not a condition to the qualification of a witness. Gen. St., p. 831, §§ 67, 72; 8 Iowa, 203.

4. The words of the juror during the pendency of the trial in regard to the identification of the watch, would not justify the court in granting a new trial. They were addressed to the judge in open court, in presence of defendant and his counsel. Whatever may be said as to the impropriety of such conduct on the part of a juror, it cannot avail the defendant unless it has "tended to prevent a fair and due consideration of the case." Forming an opinion on the entire case before it is finally submitted, is not ground for a new trial. All that these words convey, is an expression upon one point—that not necessarily conclusive. It does not indicate any unwillingness to hear and fairly consider any testimony the defendant might have, contradictory or explanatory of that given by the State. It was simply a hasty and unguarded expression of a juror upon what seemed then, to him, an unnecessary repetition of testimony. 1 Gra. & Wat., 84; 2 id., 462, 593; 2 Whar. Am. Cr. L., §§ 3111, 3147, 3152, 3 Gill, 368; 4 Penn. L. Jour., 512; Gen. St., 1868, p. 864, § 275.

5. There was no error in the charge of the court. The instructions given were full, clear, and very favorable to the defendant.

6. The court properly rejected the affidavit of the juror on the hearing of the motion for a new trial. Affidavits of jurors are not received to impeach their verdict. 4 Johns., 487; 1 Wend., 300; 1 Gra. & Wat., 1429, 1439.

7. Where an appellate court on an examination of the evidence, can see that the guilt of the party convicted

was conclusively shown by abundant and overwhelming testimony, and that such testimony consists of a series of circumstances disclosed by some thirty witnesses, it ought not 'to grant a new trial, unless it clearly appears that the substantial rights of the defendant have been prejudiced.

The opinion of the court was delivered by

SAFFORD, J.: The question first presented for the consideration of the court upon the argument of this case, was practically decided in the case of *Thompson v. The State*, 5 Kas., 159. But notwithstanding such previous determination, and owing to the importance of the question made, as bearing upon the case at bar, it has been deemed the duty of the court to review the whole matter, and with especial reference to the authorities cited and the arguments submitted by appellant's counsel, as sustaining the positions they have assumed. This has been carefully done; and as a result the members of the court remain satisfied as to the correctness of the decision referred to. We also think that the record before us, showing as it does, that the witness on account of whose absence a continuance was asked for, was beyond the limits of the State, presents a proper case for the application of the same principles and practice, and the court was right in so holding.

1. TRIAL.—Continuance—admission of affidavit.

II. It is claimed that the court below erred in the excusing of certain persons who were summoned as jurors, and who might otherwise have been accepted by the parties, as triers in this case. We are of the opinion that this whole matter of excusing jurors from serving in any particular case, and upon application to be so excused, is, to a great extent, within

2. JURORS—Not error for court to excuse from service.

the discretion of the court having cognizance thereof; and unless such discretion has been abused, a reviewing court will not interfere. Such does not appear to have been the case in the present instance; and besides, the record shows that a jury acceptable to all was in fact obtained.

III. It is further claimed that the court erred in permitting certain witnesses to testify on the part of the State whose names were not indorsed upon the information before the trial. It is the duty of the prosecuting attorney to indorse upon such information the names of the witnesses *known to him* at the filing of the same; and with respect to the names of such other witnesses as may afterward become known to him, they are to be indorsed before the trial, under the direction of the court. Crim. Code, Gen. St. 1868, p. 831, § 67. These provisions are no doubt wise and salutary in their aims and effects. But as we understand it, there is nothing in them, or any other statute which would have the effect of prohibiting a witness from testifying whose name had become known to the prosecution after the commencement of the trial, and without his name being indorsed upon the information at all. Nor do we think that such a prohibition, if it did exist, would as a rule be calculated to promote justice. Cases, as is well known to every practitioner at the bar, often occur, where during the progress of a trial, a necessity arises for the introduction of certain kinds of testimony which could not have been known or anticipated on the part of the prosecution before the commencement of the trial; as, for example, if it should be within the power of the prosecution, and justice should require, the impeachment of a witness sworn on the defense, and such witness had been hitherto entirely unknown to the prosecuting attor-

*3. Witnesses— indorsement of names on information.*

ney. In such a case the universal practice has been to call and examine witnesses without regard to their having been previously named and summoned, or even thought of. Other instances, in which the adoption of a rule such as is contended for might operate to defeat the ends of justice, will readily be suggested; and it is not seen how injustice would be likely to result from allowing such witnesses to be examined in any case. In this case, especially are we at a loss to see how the appellant has been prejudicially affected by the course pursued, relative to the matter under consideration.

IV. It is further claimed that a new trial should have been granted in this case by reason of the remark of a juryman, made in open court and during the progress of the trial, that "he thought the watch sufficiently identified," etc. Such conduct on the part of a juror was no doubt improper, and entirely uncalled for by the circumstances of the case. But it does not appear from the record, or otherwise, that it operated to the prejudice of the appellant. The remark of the juror did not show prior knowledge of the case, or prejudice against the accused; nor did it indicate that the juror was disposed to give the accused any other than a fair trial. Then, as to its having any possible effect on the minds of the remaining eleven jurors, it is not claimed or even intimated in the arguments of counsel. How, then, shall we say that the verdict was affected thereby?

*4. MISCONDUCT of the jury.*

V. But again it is claimed that the court below erred in the instructions to the jury in the following statement: "Should you find defendant guilty of the murder of Jacob Barnett, without deliberation and premeditation, except in those cases embraced in the statute which I have read to

*5. Instructions to be considered together; and if not prejudicial, as a whole, no error.*

you, the offense would be murder in the second degree."
The objection urged here, and to the instruction given at
the instance of the county attorney, is, that the court as-
sumed that a killing and murder had been committed.
Considered apart from the rest of the charge, and unex-
plained, this objection might be held to rest upon sub-
stantial grounds; but taking the instructions named in
connection with what goes before, and as explanatory of
them, we are of the opinion that the jury could not have
been misled thereby. But we think the charges com-
plained of could not have prejudiced the appellant, upon
another ground, and that is, from the fact charged, and by
the finding and verdict of the jury, they may be regarded, as
it were, out of the case, so far as any influence they might
have had upon the minds of the jury. The instructions
named related to *inferior* degrees of homicide; while the
accused was charged with, and convicted of, murder in
the *first degree.*

VI. Another point is urged for the appellant, relative
to the giving of a charge by the court concerning the
6. Inattention or effect, as testimony, of the affidavit for a con-
misunderstand-
ing of jury. tinuance, and which charge it is claimed was
not heard or understood by all of the jury. We think
that this objection is scarcely worthy of serious consider-
ation. The very fact that the affidavit had been read and
treated as the deposition of the absent witness, and as the
law prescribes, and especially when taken in connection
with the further fact, as shown in the record and admit-
ted upon the argument, that the charge asked for was in
fact read to the jury, would seem to show beyond a doubt
that the court performed all that could be reasonably
required in the premises, and that the jury must have

fully understood what was the duty required at their hands, as relating to the testimony referred to.

VII. The last point made by the appellant is, that the verdict is not sustained by sufficient evidence. This however, is not specially pressed, and we do not feel called upon to examine the testimony at length in this opinion. We will say, however, that after a careful reading of the entire record, we are of the opinion that the jury had the warrant of ample testimony to support their finding.

Some other questions are raised upon the record and argument of counsel, but they do not seem to call for any particular discussion. We think there is no error shown in this case for which a reversal of the judgment should be had.

The judgment of the court below must be affirmed.

All the Justices concurring.