IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,753

STATE OF KANSAS,
*Appellee*,

v.

VICTOR FRITZ BROSSEIT,
*Appellant*.

SYLLABUS BY THE COURT

1.

Appellate courts review a district court's decision to permit the late endorsement of a State's witness for an abuse of discretion.

2.

When interpreting a statute, appellate courts ascertain legislative intent by looking to the statute's plain language, giving common words their ordinary meaning. If the plain language is unambiguous, the court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. However, when faced with an ambiguity, courts must attempt to ascertain legislative intent and in doing so may look to canons of construction, legislative history, the circumstances attending the statute's passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested.

3.

Stare decisis instructs that points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised. A court will overrule prior caselaw when:  (1) it is clearly convinced

1

a rule of law established in its earlier cases was originally erroneous or is no longer sound because of changing conditions and (2) more good than harm will come by departing from precedent.

4.

K.S.A. 22-3201(g) gives the district court broad discretionary power in allowing the late endorsement of witnesses and prohibits late endorsement only when it will result in actual prejudice in the defendant's ability to defend against the charges. A defendant can show actual prejudice when the late endorsement comes as a surprise and the testimony was critical or, in other words, of a climactic and highly damaging nature. To show reversible error on appeal, the defendant must have objected to the late endorsement, requested a continuance, and been denied that continuance.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 17, 2017. Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed August 17, 2018. Judgment of the Court of Appeals is affirmed. Judgment of the district court is affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Stephen A. Hunting,* county attorney, argued the cause, and *Derek Schmidt,* attorney general, was with him on the briefs for appellee.

The opinion of the court was delivered by

PER CURIAM:  Victor Brosseit seeks review of the Court of Appeals decision affirming his conviction for driving under the influence (DUI). Brosseit argues that the district court and the panel erred when they concluded that K.S.A. 22-3201(g) permitted the State to endorse a witness on the day of trial. Finding no error, we affirm.

2

On June 23, 2014, Officer Brandon Early pulled Brosseit over after Brosseit failed to maintain a single lane while driving his truck. Early claimed that he smelled a strong odor of alcohol when he made contact with Brosseit and noticed that Brosseit's eyes were bloodshot and watery and his speech was slurred. After a dispatch operator informed Early that Brosseit's license was revoked, Early asked Brosseit to exit the vehicle and perform field sobriety tests. Early testified that Brosseit stumbled when he got out of his truck. Brosseit told Early he could not perform the tests because he was disabled. Brosseit attempted to recite the alphabet at Early's request but failed to recite it accurately. He also declined to submit to a preliminary breath test. Brosseit was placed under arrest, and a second officer searched Brosseit's vehicle. The officer found an open can of beer, a plastic mug with liquid, and a bottle of whiskey that had previously been opened.

Early read Brosseit an implied consent advisory and again asked if he would take a breath test. When Brosseit refused, Early obtained a warrant to obtain a blood sample. Scott Harris, an emergency medical services (EMS) paramedic, drew Brosseit's blood. Early submitted the sample to the Kansas Bureau of Investigation (KBI) laboratory for testing. The results indicated that Brosseit's blood alcohol level was 0.103, plus or minus .007.

The State initially charged Brosseit with one count of felony DUI in violation of K.S.A. 2013 Supp. 8-1567(a)(3) ("operating or attempting to operate any vehicle within this state while . . . under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle"); one count of driving while his license was revoked as a habitual violator or driving while suspended in the alternative; and one count of transporting an open container. In an amended complaint, the State added

alternative counts of DUI in violation of K.S.A. 2013 Supp. 8-1567(a)(1) ("operating or attempting to operate any vehicle within this state while . . . [t]he alcohol concentration in the person's blood or breath as shown by any competent evidence, including other competent evidence, as defined in paragraph [1] of subsection [f] of K.S.A. 8-1013, and amendments thereto, is .08 or more") and K.S.A. 2013 Supp. 8-1567(a)(2) ("operating or attempting to operate any vehicle within this state while . . . the alcohol concentration in the person's blood or breath, as measured within three hours of the time of operating or attempting to operate a vehicle, is .08 or more"). The State amended the complaint a second time to include one count of refusal of preliminary breath test. None of the complaints identified Harris, the EMS paramedic, as a potential witness.

At trial, the State sought to endorse Harris immediately before calling him as a witness. The district court allowed the endorsement over Brosseit's objection. Harris testified about his training as an EMS paramedic and about the procedure that he performs when drawing blood. He testified that he drew Brosseit's blood at the scene of Brosseit's arrest. Harris described the custody receipt that he completed when drawing Brosseit's blood and testified that after drawing the blood, he agitated the tube in which he had collected the sample, placed it in a holder, initialed it, dated it, initialed an evidence seal on the tube, and then turned it over to Early. Brosseit watched Early place the tube into an evidence kit.

The trial court instructed the jury to consider whether Brosseit was guilty of DUI under two different theories: "operating a vehicle while having a blood alcohol concentration of .08 or more" as measured within three hours of the time of operating or attempting to operate the vehicle and "operating a vehicle while under the influence of alcohol." The jury found Brosseit guilty under both theories. It also found him guilty of driving while his license was revoked as a habitual violator, of transporting an alcoholic beverage in an opened container, and of refusal to take a preliminary breath test. The

4

district court sentenced Brosseit to 12 months in jail for driving under the influence, 12 months in jail for driving while his license was revoked as a habitual violator, and 30 days in jail for transporting an open container, all to run consecutive. The court also fined Brosseit $10 for refusing the preliminary breath test.

Brosseit appealed and the panel affirmed his convictions. *State v. Brosseit*, No. 114,753, 2017 WL 657867 (Kan. App. 2017) (unpublished opinion). Brosseit petitioned for this court's review of three issues. This court granted Brosseit's petition with respect to one issue only:  whether the panel erred when it affirmed the district court's decision to allow the late endorsement of Harris.

ANALYSIS

Brosseit argues that the district court erred when it allowed the State to endorse Harris on the day of trial because K.S.A. 22-3201(g) prohibits such a late endorsement.

*Preservation*

Before moving to the merits of Brosseit's argument, we briefly address the State's contention that Brosseit did not preserve his claim in the district court. Brosseit persuasively responds that this court cannot address the State's preservation argument because the State did not cross-petition for this court's review of any preservation issues.

Supreme Court Rule 8.03(a)(4)(C) (2018 Kan. S. Ct. R. 54) provides that this court "will not consider issues not presented or fairly included" in a petition for review. Supreme Court Rule 8.03(b)(2) permits a respondent to cross-petition for this court's review of issues not included in the petition for review. The respondent may also respond to the petition for review, wherein the respondent can provide "alternative grounds for

5

affirming the decision of the Court of Appeals, provided those grounds were raised and briefed in the Court of Appeals." Supreme Court Rule 8.03(c)(3) (2018 Kan. S. Ct. R. 55).

In *State v. Gray*, 306 Kan. 1287, 1292, 403 P.3d 1220 (2017), we declined to consider the State's preservation argument when the State had not cross-petitioned for review of the Court of Appeals' conclusion that Gray had properly preserved his claim.

Here, the State argued to the Court of Appeals that Brosseit had not preserved his argument because, while he objected to Harris' late endorsement, he did not argue that the endorsement violated the plain language and legislative intent of K.S.A. 22-3201(g)—his argument on appeal. The Court of Appeals did not address the State's preservation argument; it moved directly to the merits. It is unclear whether the panel concluded the issue was properly preserved without saying so in its decision or if it neglected to consider the argument.

As in *Gray*, the State did not cross-petition for review of the Court of Appeals conclusion or lack thereof regarding preservation. Nor did the State submit a response to the petition for review. Accordingly, the preservation issue is not before this court, and we will reach the merits of Brosseit's claim.

*Late Endorsement*

Brosseit argues that the plain language of K.S.A. 22-3201(g) requires the State to endorse all known witnesses when it files the complaint and only permits endorsement after that time if the State was unaware of the witness when it filed the complaint. Brosseit asserts that the State knew of Harris at the time it filed the complaint and was consequently barred from endorsing him later.

6

Relying on our precedent, the Court of Appeals affirmed the district court's decision to allow the State to endorse Harris because it concluded that K.S.A. 22-3201(g) permits the prosecutor to endorse any witness at any time as long as it does not cause prejudice to the defendant. Brosseit acknowledges that the lower courts followed this court's caselaw in their decisions; he argues that we have incorrectly interpreted K.S.A. 22-3201(g) in those cases.

*Standard of Review*

Appellate courts generally review the district court's decision to permit the late endorsement of a State's witness for an abuse of discretion. *State v. Snow*, 282 Kan. 323, 335, 144 P.3d 729 (2006), *disapproved on other grounds by State v. Guder*, 293 Kan. 763, 267 P.3d 751 (2012). To the extent resolution of the issue requires interpretation of a statute, this court's review is de novo. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

*Discussion*

When interpreting a statute, this court "ascertain[s] legislative intent by looking to the[] statute[']s[] plain language, giving common words their ordinary meaning. If the plain language is unambiguous," this court does "'not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it.'" *State v. Ryce*, 303 Kan. 899, 906, 368 P.3d 342 (2016) (quoting *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 998-99, 348 P.3d 602 [2015]), *affirmed* 306 Kan. 682, 396 P.3d 711 (2017). However, "[w]hen faced with an ambiguity, courts must attempt to ascertain legislative intent and in doing so may look to canons of construction, legislative history, the circumstances attending the statute's passage, the

7

purpose to be accomplished, and the effect the statute may have under the various constructions suggested." *State v. Quested*, 302 Kan. 262, 268, 352 P.3d 553 (2015).

Brosseit calls into question this court's long-standing interpretation of K.S.A. 22-3201(g). Therefore, we must also consider the doctrine of stare decisis. Stare decisis "instructs that points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised." *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362-63, 361 P.3d 504 (2015). However, this court will "overrule prior caselaw when:  (1) it is clearly convinced a rule of law established in its earlier cases was originally erroneous or is no longer sound because of changing conditions and (2) more good than harm will come by departing from precedent." *Hoesli*, 303 Kan. at 363.

K.S.A. 22-3201(g) provides the following guidelines for endorsing States' witnesses:

"Except as otherwise provided, the prosecuting attorney shall endorse the names of all witnesses known to the prosecuting attorney upon the complaint, information and indictment at the time of filing it. Except as otherwise provided, the prosecuting attorney may endorse on it the names of other witnesses that may afterward become known to the prosecuting attorney, at times that the court may by rule or otherwise prescribe. If any witness is to testify and the prosecuting attorney believes the witness who has provided information is in danger of intimidation or retaliation, the prosecuting attorney may delay identifying such informant witness until such informant witness actually testifies but in no event shall identification of a witness be delayed beyond arraignment without further order of the court after hearing and an opportunity of the defendant to be heard."

This court has interpreted K.S.A. 22-3201(g) and its prior versions to require prosecutors to endorse known witnesses on the complaint at the time it is filed but has held that the failure to do so does not bar the State from endorsing the witness later. See *State v. Donaldson*, 279 Kan. 694, 704, 112 P.3d 99 (2005). We have held that the statute gives "the district court broad discretionary power in allowing the late endorsement of witnesses" and prohibits late endorsement only when it will result in "actual prejudice in [the defendant's] ability to defend against the charges." *Snow*, 282 Kan. at 335.

A defendant can show actual prejudice when the late endorsement comes as a surprise "'and the testimony was critical or, in other words, of "a climactic and highly damaging nature."'" *State v. Shelby*, 277 Kan. 668, 674, 89 P.3d 558 (2004) (quoting *State v. Stafford*, 213 Kan. 152, 164, 515 P.2d 769 [1973]). To show reversible error on appeal, the defendant must have objected to the late endorsement, requested a continuance, and been denied that continuance. *Donaldson*, 279 Kan. at 705.

This court has been interpreting the language in the statute and its predecessors in the same manner for over a century. See *The State v. Price*, 55 Kan. 606, 608, 40 P. 1000 (1895). Following the doctrine of stare decisis, we will only change course if we are clearly convinced that this interpretation was erroneous or is no longer sound.

Brosseit argues that the statute is unambiguous and does not support this court's interpretation. He highlights the language in the statute providing that, after filing the complaint, the prosecutor may endorse "other witnesses *that may afterward become known* to the prosecuting attorney . . . ." (Emphasis added.) K.S.A. 22-3201(g). Brosseit asserts this language means that a prosecutor may only endorse a new witness after the complaint is filed if the prosecutor did not know of the witness at the time of filing.

9

Brosseit also contends that, as a result of the clear statutory language, a defendant is under no obligation to request a continuance in order to show reversible error on appeal.

We disagree with Brosseit's claim that the statute is plain and unambiguous. On its own, the wording he highlights might have the meaning Brosseit advances, but this wording does not stand alone. After providing that "the prosecuting attorney may endorse . . . witnesses that may afterward become known to the prosecuting attorney," the sentence continues with "at times that the court may by rule or otherwise prescribe." K.S.A. 22-3201(g). This phrase appears to give the district court wide discretion to allow the State to endorse witnesses at any time. Thus, the statute gives conflicting direction. Is the State limited to endorsing only witnesses that have become known since filing the complaint? Or does the district court have the authority to allow witness endorsement at its discretion? Because the words in the statute do not answer this question, it is not plain and unambiguous.

In light of the ambiguity, we turn to the legislative history to help us decide whether our long-standing interpretation is in need of correction.

K.S.A. 22-3201(g)'s predecessor was enacted in 1864. It read as follows:

"All information shall be filed during term in the court having jurisdiction of the offense specified therein by the prosecuting attorney of the proper county or district, as informant; he shall subscribe his name thereto, and endorse thereon the names of the witnesses known to him at the time of filing the same, and at such times before the trial of any case, as the court may by rule or otherwise prescribe. He shall also endorse thereon the names of such other witnesses as shall then be known to him." G.L. 1864, ch. 64, sec. 2.

10

The statute was amended in 1867 and 1868 and interpreted by this court in 1870 in *The State v. Dickson*, 6 Kan. 209 (1870). At that time, the statute provided:

"Informations may be filed during term time or within twenty days preceding the term, in any court having jurisdiction of the offense specified therein (except in cases of fugitives from justice, which may be filed with the clerk in vacation), by the prosecuting attorney of the proper county, as informant; he shall subscribe his name thereto, and indorse thereon the names of the witnesses known to him at the time of filing the same. He shall also indorse thereon the names of such other witnesses as may afterwards become known to him, at such times before the trial as the court may, by rule or otherwise, prescribe. All informations shall be verified by the oath of the prosecuting attorney, complainant or some other person." G.S. 1868, ch. 82, sec. 67.

Based on the language of the statute, the *Dickson* court affirmed the trial court's decision to allow witnesses to testify for the State when the prosecuting attorney had failed to endorse those witnesses before the trial began. The court reasoned there was nothing in the statute "which would have the effect of prohibiting a witness from testifying whose name had become known to the prosecution after the commencement of the trial, and without his name being indorsed upon the information at all." *Dickson*, 6 Kan. at 219.

This court affirmed *Dickson* in *The State v. Cook*, 30 Kan. 82, 85, 1 P. 32 (1883), but cautioned:

"[I]f the defendant is taken by surprise thereby, the court should extend to him all possible facilities for a fair, full and impartial trial, and if necessary may delay or even continue the hearing of the case until he has ample opportunity to prepare to meet the evidence of the witnesses indorsed upon the information after the commencement of the trial."

11

Furthermore, the *Cook* court held,

"If the court shall be convinced that the county attorney had purposely failed to indorse on the information the names of the witnesses known to him at the time of filing the same, to render it difficult for the defendant to prepare his defense, the court may, under such circumstances, within its discretion, refuse to grant the request of the county attorney to indorse on the information the names of the additional witnesses . . . ." 30 Kan. at 85.

In *State v. Price*, 55 Kan. 606, 608, 40 P. 1000 (1895), a Kansas Supreme Court comprised of different justices interpreted the *Dickson/Cook* cases to stand for the conclusion that it is

"within the discretion of the court to permit the name of a witness known to the prosecuting attorney at the time of filing the information to be indorsed thereon after the commencement of the trial, and to permit such witness to testify on the part of the state in a criminal prosecution over the defendant's objection . . . ."

It appears that, thereafter, whenever considering this statute and its successors, this court considered it to be within the trial court's discretion to allow the State to endorse a witness after the complaint was filed, whether or not the prosecutor knew of the witness at the time of filing. See, e.g., *State v. Foster*, 202 Kan. 259, 260, 447 P.2d 405 (1968) (while State's failure to endorse known witnesses until after they testified at trial was a "flagrant violation of the statute," district court did not abuse its discretion in allowing witnesses to testify because "no prejudice had been shown" by the defendant).

Notably, the language on which Brosseit relies to support his argument and our interpretation of that language was the same in 1895 as it is today. Consequently, if our interpretation is incorrect, it has been incorrect for over 100 years.

12

But in those 100-plus years, the Legislature has not passed any amendments to address the alleged error, suggesting that it was no error at all. As we noted in *State v. Jordan*, 303 Kan. 1017, 1021, 370 P.3d 417 (2016), "[l]egislative inaction may not be the strongest indicator of specific legislative purpose . . . but it is *an* indicator." To this point, we note that the statute has been amended eight times since 1895 but never in a way that indicates our long-standing interpretation is incorrect.

Brosseit disagrees. He argues that a 1996 amendment clearly indicates that the Legislature intends that all witnesses be endorsed "as soon as practicable," and in no event should they be endorsed after arraignment without a hearing on the matter. He uses this observation to argue that any cases concerning the late endorsement of a witness and decided after 1996 were decided incorrectly. Brosseit refers to the addition of the final sentence to the statute:

> "If any witness is to testify and the prosecuting attorney believes the witness who has provided information is in danger of intimidation or retaliation, the prosecuting attorney may delay identifying such informant witness until such informant witness actually testifies but in no event shall identification of a witness be delayed beyond arraignment without further order of the court after hearing and an opportunity of the defendant to be heard." K.S.A. 22-3201(g)

This contention undercuts Brosseit's argument that the statute is plain and unambiguous—if this were true, there would be no need to turn to constructive principles. This is of little consequence, however, because we find the argument unpersuasive.

Brosseit correctly observes that this court has never directly addressed this sentence when considering a postcomplaint endorsement of a State's witness. But this is

13

not a result of error; we have not addressed it because the 1996 amendment applies only when the State believes one of its witnesses is in danger of intimidation or retaliation. In none of the cases Brosseit cites was this court considering the endorsement of such a witness. See *Snow*, 282 Kan. 323 (State was unaware of witness when it filed the complaint); *Shelby*, 277 Kan. 668 (same); *State v. Bell*, 273 Kan. 49, 41 P.3d 783 (2002) (State's failure to endorse a witness was oversight); *State v. Bloom*, 273 Kan. 291, 44 P.3d 305 (2002) (late endorsement occurred because preferred witness was unavailable); *State v. Martens*, 274 Kan. 459, 54 P.3d 960 (2002) (court allowed late endorsement of KBI chemists when State listed "KBI chemists" as witnesses on complaint but neglected to include their names); *State v. Belone*, 51 Kan. App. 2d 179, 343 P.3d 128 (2015) (State decided to introduce the defendant's previous testimony on the fourth day of trial).

To the extent the sentence is less than plain and clear on this point, the legislative history supports our interpretation. In a hearing in the Senate Judiciary Committee, Kyle Smith of the KBI testified in support of Senate Bill 511 (S.B. 511), the bill responsible for this amendment. Smith explained that the bill would help prosecutors get reluctant witnesses to testify by offering some protection. *Hearing on S.B. 511 Before the Senate Judiciary Committee*, 1996 Kan. Leg. 2 (Feb. 8, 1996).

Ron Wurtz, of the Kansas Association of Criminal Defense Lawyers, testified in opposition to the bill. The minutes indicate Wurtz noted his concerns but told the committee that "language that would limit the confidentially [*sic*] of the witness to disclosure at the preliminary hearing would remove the majority of his association's objections . . . ." *Hearing on S.B. 511 Before the Senate Judiciary Committee*, 1996 Kan. Leg. 2 (Feb. 8, 1996).

14

When the Senate Judiciary Committee continued the hearing days later, Smith testified again. The minutes indicate that Smith told the committee he had worked out an amendment to S.B. 511 that addressed Wurtz' concern that prosecutors would use S.B. 511 to "abus[e] the system." Smith testified that the amendment would allow prosecutors to withhold the name of witnesses "believed to be in danger until the preliminary hearing." After Smith's testimony, the Senate Judiciary Committee voted to adopt Smith's amendment to S.B. 511 and recommend the bill favorably for passage. *Hearing on S.B. 511 Before the Senate Judiciary Committee*, 1996 Kan. Leg. 3 (Feb. 20, 1996).

The discussion surrounding this amendment supports the interpretation that it was specifically intended to address situations in which the State wishes to withhold the name of a witness for that witness' safety. As such, the amendment does not apply to the endorsement of nonendangered witnesses and we find Brosseit's argument unconvincing.

In light of the ambiguity in the statute and the Legislature's more than a century-long acquiescence, we are obliged to follow the direction of stare decisis. Indeed, this doctrine "is particularly compelling in cases where . . . the legislature is free to alter a statute in response to court precedent with which it disagrees but declines to do so." *Quested*, 302 Kan. at 278.

As a result, we uphold our cases interpreting K.S.A. 22-3201(g) and its predecessors. Under this line of cases, Brosseit was required to object to the late endorsement of Harris and request a continuance to show reversible error on appeal. Because Brosseit did not request a continuance, the Court of Appeals was correct when it ruled for the State.

The Court of Appeals decision is affirmed.

15

ROSEN, J., concurring:  I concur in the result because I think the error in allowing Harris to testify was harmless. However, I disagree with the majority's conclusion that K.S.A. 22-3201(g) permitted the State to endorse Harris on the day of trial. By its plain language, K.S.A. 22-3201(g) clearly requires that the State endorse all "known witnesses" when it files the complaint and limits any later endorsements to those witness who "*may afterward become known* to the prosecuting attorney." (Emphasis added.) In light of this clear expression of legislative intent, I cannot agree with the majority's interpretation of the statute. I would hold that if the State wishes to endorse a witness after it has filed its complaint, then the State has a duty to show that it was unaware of the witness at the time of filing. Because the State did not prove it was unaware of Harris when it filed its first complaint, I would conclude the district court erred in allowing the State to endorse Harris on the day of trial.

The majority relies heavily on stare decisis to affirm this court's unwavering interpretation of the statute. While I appreciate the important role of this doctrine in our decisions, I do not believe it has a part to play in this case. The language of the statute makes clear that the long-standing interpretation is incorrect. And, although the majority is not persuaded by Brosseit's arguments, he has presented a convincing reason why departing from our current precedent would do more good than harm. Brosseit aptly points out that requiring a criminal defendant to request a continuance in order to show reversible error on appeal may force a choice between a fair trial and a speedy trial. Surely, we should consider good any action that alleviates the requirement that a defendant give up one constitutional right as a prerequisite to accessing another.

Ultimately, however, I agree with the result in this case because I conclude that Harris' testimony was harmless. The State likely provided sufficient evidence apart from Harris' testimony to establish the foundational requirements needed to admit the blood sample. Early testified that an EMS technician took the sample and signed the toxicology request after doing so. The toxicology request included a signature where "medical personnel" are instructed to confirm that they have drawn the blood.

Even if the evidence did not suffice to meet foundational requirements, there is no reasonable probability that the jury would have found Brosseit not guilty of DUI under the theory that did not require the blood sample—driving under the influence while incapable of safely driving a vehicle. Early provided the following testimony to support that theory:  that Brosseit swerved out of his lane and that there was nothing in the lane that would have caused him to do so; that when he pulled Brosseit over, Brosseit had bloodshot and watery eyes and slurred his speech and that there was an odor of alcohol; that Brosseit stumbled after he got out of the car and did not accurately recite the alphabet; and that based on his training and observations, Brosseit was under the influence of alcohol. Additionally, the State introduced evidence of open containers in Brosseit's car and video that showed Brosseit driving and swerving out of his lane and failing to accurately recite the alphabet. Based on the presence of all of this evidence, I would conclude there was no reasonable probability that the absence of the blood test results would have changed the jury's conclusion that Brosseit was guilty of DUI.

JOHNSON and STEGALL, JJ., join the foregoing concurring opinion.

17