NOT DESIGNATED FOR PUBLICATION

No. 120,254

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAUL HERNANDEZ JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; JENNIFER ORTH MYERS, judge. Opinion filed April 3, 2020. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE and GARDNER, JJ.

PER CURIAM: A jury convicted Saul Hernandez Jr. of aggravated assault and acquitted him of criminal discharge of a firearm. On appeal, Hernandez contends that the district court erred in permitting the State to endorse a late witness for the purpose of authenticating recordings of telephone calls he made from the jail. As a result of the late endorsement of the records custodian, he argues that recordings were admitted into evidence that were unfairly prejudicial and highly climactic. Based on our review of the record, we do not find that the district court abused its discretion by allowing the late endorsement of the records custodian. Thus, we affirm Hernandez' conviction.

1

On the night of September 16, 2016, Kelsie Rosewicz went for a walk with her husband, Charles "CJ" Huddleston, near her house in Kansas City, Kansas. While Rosewicz was walking, her former roommate, and Ketner's boyfriend, Saul Hernandez, approached. Evidently believing that Rosewicz had possession of some of his property, Hernandez asked her when she was going to "give me my shit back." Hernandez then displayed a gun, cocked it, and pointed it at Rosewicz. As she was running back toward her house, Hernandez chased Rosewicz and fired a single shot in her direction.

Once inside her house, Rosewicz called the police. When officers arrived at the scene, they found a brass shell casing nearby and also discovered a bullet fragment in the wall of Rosewicz' detached garage. According to Rosewicz, she had seen Hernandez on previous occasions. However, she indicated that she did not know his last name and only knew him as Ketner's boyfriend.

Later that day, Detective Heron Santana presented Rosewicz with a photo lineup but she could not make an identification. The next day, Detective Violeta Hrgota presented Rosewicz with a second photo lineup—which included a more recent picture of Hernandez—and she was able to identify him as the shooter. Subsequently, officers used "ballistic evidence" from the September 16th shooting to allegedly link Hernandez to another shooting two months earlier involving Jennifer Galvan.

On December 11, 2017, in a consolidated complaint, the State charged Hernandez with aggravated assault for the shooting incident involving Rosewicz and criminal discharge of a firearm for the shooting incident involving Galvan. Prior to trial, the State provided Hernandez with discovery. The items produced included a disk containing recordings of multiple calls Hernandez had made from jail while he was awaiting trial.

Although the initial jury trial ended in a mistrial, the district court convened a second trial on February 26, 2018. During the four-day jury trial, both shooting charges were presented to the jury. At trial, several of the State's witnesses—including Rosewicz—were less than candid in their testimony. As a result, the State was presented with unanticipated problems in positively identifying Hernandez as the shooter.

Specifically, Rosewicz claimed to have forgotten most of the details of the shooting incident and stated that she was only there because the State was "forcing" her to testify. Similarly, Rosewicz' husband—Huddleston—did not initially comply with a subpoena to testify at trial and a warrant was issued to compel his appearance. In addition, Ketner—who is Huddleston's cousin as well as Hernandez' girlfriend—could not be located to serve with a subpoena.

After the second day of trial, the State moved to endorse a records custodian from the Wyandotte County Jail as a foundation witness in an attempt to admit recordings of four telephone calls made by Hernandez from the jail into evidence. Although the State had previously disclosed the recordings of the phone records during pretrial discovery, it had failed to endorse the records custodian as a witness or list any specific recordings to be used as exhibits at trial.

The following day, the district court heard arguments on Hernandez' objection to the late endorsement of the records custodian as well as the admission of the recordings into evidence. After a spirited discussion, the district court decided to allow the late endorsement of the records custodian. The district court also decided to admit three of the four recordings into evidence.

In reaching its decision, the district court determined that Hernandez was not surprised by the late endorsement of the records custodian or the admission of the recordings made from the jail. The district court noted that the State had disclosed the

3

recordings of the phone calls long before trial. In addition, the district court found that Hernandez should have been aware of his own statements made during the phone calls.

In the three recordings that the district court admitted into evidence, Hernandez is heard identifying himself in the first; he is heard discussing his romantic relationship with Ketner in the second; and he is heard saying that "my girl" was planning to pay off a witness in the third. In a fourth recording that the district court refused to admit into evidence, Ketner—not Hernandez—is heard speaking about potentially paying off a witness. The district court distinguished the fourth call from the others because Hernandez was not the one who referred to paying off a witness and noted that the admission of the recording would involve significant hearsay issues.

On the final day of trial, the jury found Hernandez guilty of aggravated assault for the incident involving Rosewicz. However, the jury found him not guilty of the criminal discharge of a firearm for the incident involving Galvan. The district court subsequently sentenced Hernandez to 27 months in prison. Thereafter, Hernandez filed a timely notice of appeal.

ANALYSIS

The sole issue presented on appeal is whether the district court erred in permitting the State to endorse a records custodian to lay the foundation for the admission of the recordings of the three phone calls made by Hernandez from the Wyandotte County Jail. Hernandez argues that the State's motion to endorse the records custodian on the second day of trial "came as a complete and unfair surprise to defense counsel in this case." In response, the State argues that the district court did not abuse its discretion in permitting it to endorse the records custodian because Hernandez had received the recordings during pretrial discovery.

4

K.S.A. 22-3201(g) grants a district court discretion over determining whether to allow a party to endorse witnesses during trial. *State v. Donaldson*, 279 Kan 694, 703-04, 112 P.3d 99 (2005). On appeal, we review a district court's decision to permit the late endorsement of a witness under an abuse of discretion standard. *State v. Brosseit*, 308 Kan. 743, 747, 423 P.3d 1036 (2018). Accordingly, we will generally uphold a late witness endorsement unless a defendant has been unfairly surprised and the testimony was "'climatic and highly damaging.'" *Brosseit*, 308 Kan. at 749.

Judicial discretion is abused if an action is arbitrary, fanciful, or unreasonable. In other words, we will only reverse if no reasonable person would agree with a district court's decision or if the judicial action is based on an error of fact or law. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016). When reviewing the record for abuse of discretion, we do not reweigh the evidence nor do we assess the credibility of witnesses. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

Here, Hernandez argues that he was surprised by the late endorsement of the records custodian and—as a result—he was prejudiced by the admission of the recordings of the three phone calls into evidence. Specifically, Hernandez argues that his attorney was not prepared to address the phone calls because he did not anticipate they would be used at trial. Although Hernandez does not dispute that he received the recordings during the course of discovery, he notes that the State provided a large amount of material in discovery and suggests that this made meaningful preparation for trial to be nearly impossible.

A review of the 39-page transcript of the hearing on the State's motion to endorse the records custodian reveals that the district court thoroughly considered the arguments of counsel in light of what had occurred at trial. After doing so, the district court found that the State had given a legitimate reason for requesting the late endorsement. The district court also found that neither Hernandez nor his attorney were unreasonably

5

surprised. In so ruling, the district court noted that the State had produced the recordings of the phone calls well in advance of trial. Further, the district court found it to be significant that the statements on the recordings admitted into evidence were made by Hernandez, himself, "so he's very aware of the statements that he made . . . ."

While the late endorsement was, no doubt, problematic for Hernandez and his attorney, we do not find the district court's decision to be unreasonable—particularly given the content of the recordings. As the record reflects, the State explained that the late endorsement was due to the reluctance of the witnesses to testify rather than an intentional withholding of the witness as a trial strategy. This explanation was accepted by the district court, finding "no reason to believe that [the State] would misrepresent any law or facts to the Court." Absent evidence to the contrary, we have no reason to substitute our judgment for that of the district court on this point.

Moreover, we do not characterize the testimony of the records custodian as climatic or unduly prejudicial. The testimony of the records custodian was limited to authenticating that the recordings of the phone calls that were made by Hernandez from the jail. Indeed, even Hernandez does not make the argument that the records custodian's testimony was climatic. For these reasons, we find no abuse of discretion by the district court in allowing the records custodian to testify at trial.

Although Hernandez phrases the issue presented in this case as an error in the late endorsement of the records custodian as a witness, he also suggests that the admission of the recordings themselves was erroneous. In particular, Hernandez focuses on the recording of the third phone call from the jail in which Hernandez speaks about having "my girl" pay off a witness. Although the recording of this phone call was naturally unfavorable to Hernandez' defense because it suggests the consciousness of guilt, we do not find the district court abused its discretion in allowing it to be played to the jury.

6

Generally, all relevant evidence is admissible under K.S.A. 60-407(f). Relevant evidence is defined as evidence having "any tendency in reason to prove any material fact." K.S.A. 60-401(b). To be relevant, evidence must be both material and probative. *State v. Page*, 303 Kan. 548, 550-51, 363 P.3d 391 (2015). Evidence is material when the fact it supports is at issue and is significant under the substantive law of the case. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016). Moreover, evidence is probative if it has any tendency to prove any material fact. *State v. Dean*, 310 Kan. 848, 862, 450 P.3d 819 (2019).

"Kansas law favors the admission of otherwise relevant evidence, and the exclusion of relevant evidence is an extraordinary remedy that should be used sparingly." *State v. Seacat*, 303 Kan. 622, 640, 366 P.3d 208 (2016). Likewise, Kansas courts have held "that evidence demonstrating a defendant's consciousness of guilt can be material to several issues in a criminal case, including intent, identity, plan, or other matters." *State v. Huddleston*, 298 Kan. 941, 960, 318 P.3d 140 (2014); *State v. Lippard*, No. 114,588, 2017 WL 3837700, at *5 (Kan. App. 2017) (unpublished opinion) (holding that statements made in call from jail encouraging witness not to testify were relevant as to consciousness of guilt and were not unduly prejudicial).

In *Huddleston*, a defendant sent two letters from jail in which he advised one codefendant how to testify against another codefendant in a pending criminal trial. The Kansas Supreme Court agreed with the district court that the letters were both material and probative—and thus relevant—to the defendant's consciousness of guilt. 298 Kan. at 960-61. Furthermore, our Supreme Court found that the district court did not abuse its discretion in finding that the probative value of the letters outweighed the prejudicial effect of admitting the letters into evidence. 298 Kan. at 963-64.

Based on our review of the record, we find that Hernandez' statement that "my girl" was going to pay off a witness was relevant, material, and probative in determining

7

his consciousness of guilt. We also find that it was reasonable for the district court to determine that the probative value of the statement outweighed its prejudicial impact. Accordingly, we conclude that the district court did not abuse its discretion in admitting the recording of Hernandez' statement into evidence.

We, therefore, conclude that the district court did not abuse its discretion in allowing the late endorsement of the records custodian or in admitting the three recordings of the telephone calls into evidence.

Affirmed.